Nov. 1813.

## THOMAS STURGES *against* JOHN C. BUSH.

MOTION for a new trial.

This was an action of *account*, brought by *Sturges* against *Bush*, as surviving partner of the late firm of *Bush* and *Norton*.

It was alleged in the declaration, that from the 1st of *July*, 1808, until on or about the 27th of *May*, 1810, *Norton & Bush*, as merchants in company, were the bailiffs and receivers of the plaintiff, and did, during that time, receive of him to account for, as their agent, divers monies, goods, chattels, bills of exchange, bank checks, &c. The property for which the plaintiff claimed an account, was alleged to have been sent by him to *Norton & Bush*, from the *West-Indies ;* a part of which, it was stated, belonged to him, it having been purchased with his own money.

It was also alleged, that *Bush & Norton* received a check on the *Bridgeport Bank*, for 500 dollars, which was the property of the plaintiff.

The defendant pleaded the *general issue.*

On the trial, before the Superior Court, the defendant proved, that in the spring of 1808, and during the existence of the embargo laws of the *United States*, the plaintiff, as the agent of *Norton & Bush*, undertook to export from the *United States* to the province of *New-Brunswick*, in the *British* dominions, and from thence to the *British West-India* islands, a large quantity of flour, beef, pork and lard, the property of *Norton & Bush*, contrary to the embargo laws; and that after the property should arrive at *New-Brunswick*, the same

*A.*, as the agent of *B.*, in pursuance of an agreement between them, during the existence of the embargo laws, and in violation thereof, exported from *United States* to the province of *New-Brunswick,* in the *British* dominions, certain goods, wares, and merchandize, the property of *B ;* and from thence, shipped them in an *English* bottom, to the *British West-India* islands, and there sold them, and remitted the avails, in money and the produce of the islands, to *B.*, in the *United States.* In an action of account in favour of *A.*

against *B.*, founded upon the above state of facts, it was held, that these transactions constituted but one entire voyage, which was illegal ; and that the plaintiff had no cause of action.

Held, also, that in such action, if a part, only, of the articles mentioned in the declaration, are received by the defendant, to be accounted for, and a part either not received, or if received, not to be accounted for, this matter need not be found specially ; but that a general verdict will be good.

In an action of account, a special demand need not be alleged, or proved.

was to be shipped, by the plaintiff, to the *West-Indies*, and there to be by him sold for the benefit of *Norton & Bush*, and the avails thereof to be remitted to them; that in pursuance of this undertaking, the plaintiff transported the property to *New-Brunswick*, in violation of the embargo laws, and from thence, shipped the same, in an *English* bottom, to the *British West-India* islands, and there sold the same, and remitted the avails to *Norton & Bush ;* and that the several articles of property mentioned in the declaration, were the avails of the property thus shipped.

It was admitted, on the trial, that no demand had been made of the defendant to account, previous to the commencement of the suit.

It was also admitted, that *Norton & Bush* did not receive all the articles of property mentioned in the declaration.

The court, in their charge, instructed the jury, that although they should find, that the transportation of the property from the *United States* to *New-Brunswick,* was effected by the plaintiff, as the agent of the defendant, in violation of the embargo laws, as claimed by the defendant; and that the property was from thence shipped to the *West-India* islands, and there sold by the plaintiff, as agent of the defendant; and that the avails were remitted in the manner stated in the declaration; yet, the law was so, that the embargo laws could have no operation on this transaction.

The court also instructed the jury, that a special demand was unnecessary, in an action of account.

The jury were also instructed, if they should find, that a part of the articles, charged in the declaration, were not received, or if received, were not to be accounted for, yet, if they should find, that any of the property mentioned in the declaration was received by the defendant to account for, he was liable to account, and that they might return a general verdict. The jury found the issue for the plaintiff accordingly. And the verdict being accepted, the defendant moved for a new trial, on the ground of a misdirection; and the questions of law arising upon the motion, were reserved for the consideration and advice of the nine Judges.

STURGES
*v.*
BUSH.

*N. Smith* and *L. Mitchell,* in support of the motion.

1. The defendant is not liable to this action, until a demand of his account has been made. A special demand is stated in the declaration. The fact has not been proved. The defendant ought not to be sued until he has had an opportunity to render his account. *Topham* v. *Braddick*, 1 *Taunt. Rep.* 571.

2. A special verdict ought to have been found. The same degree of certainty ought to be required in the action of account, as in any other. 1 *Vin. Abr.* 175, 176. No difficulty or inconvenience could result, if the verdict should be as particular as the declaration itself. 1 *Went. Pl.* 87. There is no precedent of a general declaration in account. The question, whether the defendant is the bailiff and receiver of the plaintiff, is to be settled by the court, and not by the auditors. If the jury do not find particularly as to the articles stated in the declaration, the question will, of course, be drawn from the court to the auditors.

3. The transaction on which this action is founded, was illegal. Suppose the exportation of wood to be prohibited by a law of this state. *A.* agrees with *B.* to transport a quantity of wood to *New-York*, and from thence to ship it to *Philadelphia*, there to be sold, and the avails vested in coffee, which is returned to *Connecticut;* would not this transaction be illegal? If remitting the avails is totally distinct from the act of exportation, the transaction is not illegal : But this is all one entire transaction. The avails are the fruit of the illegal act of transportation. The whole constitutes the illegal act. Suppose, also, that negroes are sent to *South Carolina,* and sold there for rice : Will it be said, that this is lawful, because rice may be lawfully remitted? This would be a sheer illegal transaction. *'Esp. Dig.* vol. 1. p. 20, 21. 24. (*Gould's* edit.)

*Daggett* and *R. M. Sherman,* contra.

1. The first reason assigned why a new trial ought to be granted, is, that the special demand alleged in the declaration, should have been proved on the trial. The general

issue of *never bailiff and receiver*, does not involve the fact of a demand, in the case stated in the declaration. The allegation of a demand, is mere surplusage, and may be wholly disregarded. After a reasonable time, *Norton* and the defendant, merely by receiving the property to account, were liable to render an account to the plaintiff, without demand. It was, then, unnecessary to prove a demand, in order to subject the defendant; inasmuch as the nature of the transaction does not render such a demand a prerequisite of his liability.

2. If the jury are required to find specially, it must be so, on the ground, that their verdict will be conclusive evidence before the auditors, and the only evidence of the defendant's accountability. The same position will require, that the plaintiff must state in his declaration, every article for which he seeks an account. This would defeat the very end of this kind of action. Its object is, to let in proof, by the oaths of the parties, of transactions between them, which are presumed to be unknown to every one else. The property received by the defendant, is as important a subject of enquiry, as the manner in which he has disposed of it. But, by the defendant's reasoning, the receipt of every article of the property, is to be conclusively proved to, and found by, the jury, by common law evidence. The nature of the action of account, requires, that that subject should remain open for investigation before the auditors, upon the oaths of the parties. The argument of the defendant, therefore, is inadmissible.

The receipt of property by the defendant to account, is introduced for very different purposes, before the jury, and before the auditors. It is exhibited to the jury, not as a *fact*, but as evidence of a distinct fact, *viz.* that relation between the parties, designated by the words " bailiff and receiver." The jury find the fact of bailiff and receiver, only, and not the evidence of it : But before the auditors, the receipt of property is shewn as a fact, and not as evidence. Before the auditors, therefore, the evidence on which the jury found the relation subsisting between the parties, will not appear. That the relation existed, is all that is found by the jury;

and whether the plaintiff or defendant is in arrear, is to be ascertained by the auditors, without regarding the evidence, as such, on which the jury found the fact which was within their peculiar province.

There is much surplusage in this declaration. It not only describes, generally, the kind of relation claimed to subsist between the parties, *viz.* a receiver of goods, wares and merchandize, particularly specified, and stated to have been received in a particular manner, but also details much evidence on which that fact may be found.

The duty of the jury is the same, as if the plaintiff had been silent as to these particulars.

In the case of a bailiff on a farm, a co-partner, co-executor, tenant in common, &c. against all of whom, this action may be maintained, either at common law, or by statute, the plaintiff cannot state, because he does not know, and much less can he prove, every article received by the defendant. He relies upon his disclosure. The action is given for the benefit of the plaintiff; for he has the sole right of electing this remedy. The great object is to supply the want of common law proof. That object is defeated, and the action is useless, on the ground taken by the defendant.

3. The only remaining objection made by the defendant, is, that this transaction was illegal; and that, therefore, the plaintiff has no cause of action.

The illegality of a transaction can never preclude a recovery, in any action, except in two cases. First, where the action is founded on the very contract which is illegal : As if *A.* sues *B.* on a promise to pay him a certain sum, for beating *C.* The action being to enforce an illegal contract, cannot be sustained. Secondly, where money has been paid on an illegal consideration ; and the claim of the plaintiff, is, to recover it back, on the ground that the contract was illegal, and, therefore, that he was under no obligation to pay it : As if *B.* has paid *A.* for beating *C.*, he cannot recover back the money. The principles recognized in the various cases in the books, relative to this point, are all resolvable into these two propositions.

Were *Sturges* to bring his action against the defendant for his services in transporting the cargo to *New-Brunswick*, in violation of law, the objection now made, would be unanswerable. Had the defendant paid *Sturges* for such services, he could not recover the money back, on the ground that he was under no obligation to pay it.

In this case, the plaintiff sets up no demand for those services; nor does he claim to recover from the defendant, any money which he has paid him, on the ground that it was paid on an illegal contract, which he was under no obligation to fulfil.

The sale of this cargo in the *West-Indies*, was lawful. The transportation from one foreign country to another, was lawful. The violation of law consisted in the transportation from the *United States* to *New-Brunswick*, only, and by that alone, was perfected. The property shipped, was the subject of lawful mercantile dealings, afterwards. As stated in the charge to the jury, the embargo laws have nothing to do with this transaction.

INGERSOLL, J. It is my opinion there ought to be a new trial, particularly, on the ground that the charge was incorrect, in stating, " that the embargo laws could have no operation in the transaction."

I take it to be the opinion of this court, (whatever my private opinion may be,) that it was not necessary for the plaintiff to make a demand of the defendant, to account, before he commenced his action. I take it, also, to be the opinion, that if the defendant received any of the property mentioned in the declaration, to account for, the jury would be warranted in finding a general verdict, that the defendant was *bailiff and receiver*. In these two particulars, therefore, the charge was correct.

I shall now make some observations on the question, whether the embargo laws had any operation on the transaction, so as to affect the plaintiff's right of recovery? I should suppose, if a suit had been brought by the defendant against the plaintiff, to account for property put into his hands, for

VOL. V. H h h

*Nov. 1813.*

STURGES
*v.*
BUSH.

the purpose of transporting it to *New-Brunswick,* and from thence to the *West-Indies,* there to be sold, and the avails to be brought or sent home to the defendant ; that it would be very material to take into consideration what the nature of the bargain was, and whether the voyage were legal or illegal ? For, surely, it cannot be contended, that a voyage to an enemy's port, in time of war, with a view to trade with that enemy, is a legal voyage ; and that any and every contract to account for the profits of such a voyage, could be enforced in a court of justice. A doctrine directly contrary to this, has been so long established, that it cannot now be questioned. Such voyage being illegal, every action grounded on any contract to go the voyage, or account for it after it has been performed, must entirely fail, and no recovery can possibly be had on it.

Every prohibited voyage stands precisely on the same ground, with a voyage to trade with an enemy in time of war. There being, then, an embargo in force, when the voyage under consideration was undertaken, it follows, conclusively, that it was undertaken and prosecuted directly in the face of law : I mean to be understood, if the voyage were of the kind which it was contended to be, by the defendant, it was directly in the face of law. The evidence, then, offered by the defendant, tending to shew, that the voyage was planned and executed from the *United States* to *New-Brunswick,* and from thence to the *West-Indies,* tended also to shew, that the whole was one voyage, and was an infraction of the embargo laws. If so, as it strikes me, every contract relative to it, was against law, and void. If so, the charge was incorrect, in stating " that the embargo laws had no operation on the transaction." The principles, as thus laid down, appear so clear to me, that I must suppose the court, in thus charging the jury, went upon the ground, that the voyage from *New-Brunswick* to the *West-Indies,* was a distinct voyage from the voyage to *New-Brunswick* from the *United States ;* or at any rate, that the shipment of the cargo home to the defendant, was a totally distinct voyage from each of the former ; and though a consequence of a breach of the embargo laws, was, of itself, no breach of them at all.

I agree, most fully, to the principle, that property being the avails of an illegal voyage, may be sold, and a recovery had therefor, in the same manner, and to the same extent, as if it had been the avails of a perfectly legal voyage. But, at the same time, I lay it down as an incontrovertible principle of law, that every contract, the consideration of which is illegal, is void. Not only the engagement to perform such contract, but also, every engagement that may be considered as part and parcel of this contract, is utterly void. To be a little more particular in enforcing this principle ; though I confess, it appears to me to be perfectly well founded, and needs very little argument to prove it to be so ; suppose an engagement on the part of the plaintiff, to account for property to be sold by him contrary to the embargo laws, and also, an engagement on the part of the defendant, to account for property so sold and remitted to him ; both contracts are equally void. A master of a vessel cannot be called upon, by the owner, for the avails of a cargo shipped to an enemy's port, in time of war, and there sold by the former : Nor can the owner be called upon, by the master, to account for property shipped from such enemy's port, being the avails of the cargo sold. The whole being in virtue of one contract, and, therefore, one transaction, it would be absurd to say, that one part of the transaction or bargain is good, and another part is bad. If, however, on the return and settlement of the voyage, the cargo sent, or brought home, be shipped again on a new voyage, in the same vessel, and by the same master, to another port, and there sold, the master shall account with the owner for the sale ; and it never shall lie with him to say, that the cargo was imported into the *United States* contrary to law, and, therefore, there was no valid consideration for the contract to account. This can no more be done, than a purchaser of goods can refuse to pay for them, because they were illegally imported. But, as I have before observed, in the present case, the evidence offered tended to shew, that the whole transaction was contrary to the embargo laws. To ship the cargo to *New-Brunswick*, certainly, was contrary to those laws. To have ship-

Nov. 1813.

STURGES
*v.*
BUSH.

ped it directly to the *West-Indies*, would also have been equally contrary to those laws. Is there, then, any difference between shipping it directly to the *West-Indies*, or circuitously, by *New-Brunswick?* Certainly not.

How the case would have stood, if it had appeared on the evidence, that there were in fact two voyages; one directly to *New-Brunswick*, where the cargo had been sold, and instead of sending the avails home, that voyage had been settled, and a new one planned, and executed, to the *West-Indies*; I will not pretend to say. If the court, in giving the charge, proceeded on the ground, that such was the case, in my opinion, they "*leaped before they came to the stile.*" Whether the whole ought to have been considered as one voyage, or whether there were two or more independent voyages, were facts to be ascertained by the jury, according as the evidence was. If, however, the court meant to say, that the avails of a cargo illegally exported, must, in every case, be accounted for; to be sure, they did not leap before they came to the stile; but they made deduction from facts, as I think, not warranted by law.

In proof of the proposition, that every illegal contract is not only void in its inception, but that every engagement which has such illegal contract, as its basis, or is part and parcel of it, is also void, many authorities might be cited. I shall content myself with citing but few. In *Mitchell* v. *Cockburne*, 2 H. Black. Rep. 379., the case was, that two partners, by the names of *Robertson* and *Tyler*, had been concerned in illegal insurances; that is to say, they had carried on the business of underwriters on marine insurances, as partners, contrary to the act of Parliament, which prohibits all partnerships of this kind, except in two great incorporated companies. They both became bankrupt, and the plaintiffs were the assignees of *Robertson*, and the defendant was assignee of *Tyler*. *Robertson* had paid out a greater sum for losses, than he had received for premiums, and the action was brought against the assignee of the other partner to recover the proportion that was justly due, on account of the money so paid out. The court determined, that the insur-

ances being illegal, the plaintiff should not recover any thing, on the ground of having paid losses for the other partner. That the fountain being corrupt, the streams were corrupt also. The case of *Booth* v. *Hodgson*, 6 *Term Rep.* 405. was decided on the same ground ; and a case at *Nisi Prius*, by the name of *Sullivan* v. *Greaves*, is cited by the court with approbation, determined by lord *Kenyon.* It was a case of an insurance partnership, where one partner had paid to an insurance broker, for the use of the other partner, his part of losses sustained by the firm, which losses had been paid by the partner for whose benefit this money had been paid to the broker. This partner, who was to receive the money from the broker, brought his action against him for it ; but it was determined, that the action could not be maintained, because its object was to enforce an illegal contract of partnership.

The difference I have attempted to make between one voyage and two or more voyages ; or, in other words, the the different deductions of law to be drawn, from considering the present case, as a contract to perform one voyage to *New-Brunswick*, and, round to the *West-Indies*, home ; or considering the property mentioned in the declaration as being the avails merely of a former illegal voyage ; is warranted by the opinion of the court, in the case of *Bird* v. *Appleton*, 8 *Term Rep.* 562. The same distinction is also made by the court, in the case of *Wilson* v. *Marryat*, reported in the same volume, from page 31. to 46.

Upon the whole, for the reasons above stated, I am of opinion, that the evidence offered by the defendant was pertinent to the issue, and relevant testimony ; and that the court was incorrect in charging the jury, that the embargo laws had no operation on the transaction. I therefore would advise a new trial of the cause.

SWIFT, EDMOND, BRAINARD and BALDWIN, Js., severally concurred in this opinion.

MITCHELL, Ch. J. and REEVE, J., dissented.

SMITH, J.   In order to form a correct judgment in this case, it becomes necessary to see, what are the allegations in the plaintiff's declaration ; for the argument seems to have proceeded on the mistaken ground, that the action was in favour of *Bush*, calling on *Sturges* to account for property received of *Norton & Bush* ; whereas, it is an action in favour of *Sturges* against *Bush*, as surviving partner of *Norton & Bush*, for property received of *Sturges*, as his agent.   The declaration states, indeed, by way of description, the voyage which is claimed to be illegal, and in some instances, it appears, that the property which the plaintiff alleges the defendant received to account for, was sent at the same time, and in company with property which the plaintiff held as agent, and which was the avails of the voyage, which is said to be illegal.   But in every such case, the property for which the plaintiff claims an account, is clearly distinguished from that which he sent by way of remittance :  And as if to save a question on this point, he alleges, that it was *purchased with his own money.*

In this view of the subject, I do not see how the court could do otherwise, than to charge the jury, that the embargo laws had no operation on the case.   It will not be contended, I presume, that any law prohibited the sending of property, purchased with the plaintiff's own money, or that this came within the scope of the original contract.

If it appeared, in point of fact, that the defendant and his deceased partner, received no property, except what the plaintiff sent by way of remittance, as their agent, the declaration would be found untrue, and there would be no case for the embargo laws to operate upon.

The defendant cannot be subjected to pay back any part of the avails of the cargo, which they had received by way of remittance.   Thus far, they received nothing but their own ;  and whether the original contract was illegal, or not, could make no difference.   But if it should appear, that other and further property was sent, *not by way of* remittance, which the defendant received to account for, there ought to be a recovery, and the illegality of the contract would be equally unimportant.

It might, perhaps, turn out to be necessary before auditors, to go into an investigation of the voyage, which is claimed to be illegal, so far as to ascertain whether the articles, stated in the declaration, were in fact the property of the plaintiff, or whether they were the avails of the cargo received of the defendant and his partner, in the first instance. But such investigation can never be necessary, or proper, to lay a foundation for a recovery by force of the contract, which is claimed to be illegal. That contract, so far as it respects the rights of the parties, may be laid entirely out of the question ; and if introduced at all, it is merely to ascertain the collateral fact which I have mentioned.

So far as it respects a correct decision in this case, therefore, it becomes unnecessary to form any opinion as to the question, how far the embargo laws affect the original contract ? But as that point was the principal one argued before the court, I have no objection to give an opinion on that subject. And I feel no insuperable difficulty in saying, that the contract, so far as a fulfilment of it, violates the embargo laws, is void, and cannot be set up to support a recovery, either one way or the other ; but that any distinct part of it, which can be performed without infringing the embargo laws, is binding, those laws notwithstanding. A contract may be void, though the act to be done is perfectly lawful ; provided the consideration is unlawful ; and in these cases, as the consideration is entire, the whole must stand or fall together. So, a contract may be void where the consideration is lawful, provided the objects of it are a breach of law ; and in agreements of this kind, as there is no defect in the consideration, an action will lie for the non-fulfilment of every part which might be performed without a breach of law.

In the present case, there was no illegality in the consideration. The acts to be done, and which were actually done under it, so far as it respects the transportation of provisions from the *United States* to *New-Brunswick*, were a breach of the embargo laws ; and thus far, I would allow of no recovery ; but the property, when in the *British* dominions, might as well be sold as kept ; and to send back the avails, was no

more illegal than to send back the property itself. As to this part, therefore, I see no objection to a recovery. To explain myself, I will suppose, that *A.* the owner of an horse, employs *B.* to take him for a reasonable reward, and run him at certain races, which are proposed, and in case of success, to sell him, and account for the avails. Now, so far as this contract involves a violation of the laws against *horse-racing,* it is void ; but if the horse is actually sold, as this part of the agreement violates no law, I see no objection to an account regarding the avails.

TRUMBULL, J. concurred in this opinion.

New trial advised.