GEORGE FRANK SMITH *vs.* THE DAVID B. CROCKETT COMPANY.

Third Judicial District, New Haven, January Term, 1912.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A contract between an employer and a salesman, providing for the payment of bonuses, intended as bribes, to purchasing agents or other persons occupying positions of trust and confidence, is contrary to public policy and illegal.

In such a contract, the provision concerning the payment of bonuses is not separable from the other provisions; therefore there can be no recovery of the sums so expended as bonuses, nor for services rendered, in making sales by the method provided in the contract.

Smith *v.* Crockett Co.

Neither courts of law nor equity interpose to enforce illegal contracts if the parties are *in pari delicto*. Either party, however, may plead or prove the illegal character of the contract.

Where the language of a contract is of ambiguous and doubtful import, the parties may prove facts and circumstances not inconsistent with the writing itself, tending to prove in what sense they used such language; but this rule does not permit either party to testify as to what his intention was in using the doubtful language.

Argued January 17th—decided March 7th, 1912.

ACTION to recover a balance alleged to be due the plaintiff under a contract for his services and allowance for expenses as a salesman, brought to and tried by the Superior Court in New Haven County, *Gager, J.;* facts found and judgment rendered for the plaintiff for $1,927, and appeal by the defendant. *Error and new trial ordered.*

*James A. Marr,* for the appellant (defendant).

*William B. Stoddard,* for the appellee (plaintiff).

HALL, C. J. Paragraph one of the complaint alleges that on the 6th of April, 1906, the plaintiff and the defendant entered into the following written agreement:

"April 6, 1906. Agreement made this day between the David B. Crockett Company of Bridgeport, party of the first part, and Mr. G. F. Smith of Milford, Connecticut, party of the second part. The party of the first part agrees to pay the party of the second part the sum of two thousand dollars ($2,000) per annum, and if the sales of the said party of the second part reach the sum of thirteen thousand dollars ($13,000) between the first day of May, 1906, and the first day of May, 1907, they agree to pay the further sum of five hundred dollars ($500), and if the sales reach twenty thousand dollars ($20,000) the sum of one thousand dollars

($1,000) will be paid in addition to the $2,000. The party of the second part agrees on his part to use his best endeavors to sell the goods manufactured by the party of the first part to railroads, steam, trolley, etc.; the party of the first part agrees also on the first of every month to pay the party of the second part one hundred dollars ($100) for expenses during the month following, also to allow the party of the second part to pay to persons unknown to the party of the first part a bonus amounting to not more than twenty-five cents (25 cts.) per gallon."

Paragraphs two and three of the complaint allege that the plaintiff continued in the employ of the defendant under said contract, performing his duties, until October 1st, 1909, when by mutual agreement said contract was abandoned, and that there remains due the plaintiff under the contract, for salary and expenses, the sum of $2,500, for which a bill of particulars was filed by the plaintiff showing the amount of his salary during said period to be $7,000, the amount of his expenses incurred to be $4,200, and the amount paid to him to be $8,650.

In its second defense the defendant alleges, in substance, that the agreement under which the plaintiff sues provides that, in order to make sales of the goods in question, the plaintiff was permitted to pay a bonus of not more than twenty-five cents per gallon to persons who were to be unknown to the defendant, and that it was so made for unlawful objects, and that it is void as being contrary to public policy. The defendant attached to his answer a statement showing that, in rendering the services and incurring the expenses for which this suit is brought, the plaintiff paid bonuses to persons unknown to the defendant, and which have been repaid to the plaintiff, to the amount of $547.95.

The court found that the defendant had paid to the

plaintiff the $7,000 salary, the $547.95 bonuses, and that there was due the plaintiff $1,750 under the provisions of the contract giving him $100 a month for expenses, which sum, with interest, made up the judgment in favor of the plaintiff of $1,927.33.

During the trial the defendant, in support of its claim that said agreement for the payment of bonuses was illegal, asked of the plaintiff as a witness various questions to show what was done in the payment of bonuses, and whether they were paid to the agents who purchased goods, and for the purpose of influencing such agents to purchase such goods for their principals.

These questions were excluded by the trial court, apparently upon the grounds that the provision concerning the payment of bonuses, even though invalid, is separable from the other provisions of the agreement, and is not the provision of the contract sued upon or sought to be enforced by the plaintiff. That such was the view of the trial court is indicated by its statement in excluding the offered evidence, that if the plaintiff were seeking to recover the $500 bonus which he had paid out, he would be "standing on quite a different basis."

We are of opinion that by the present action the plaintiff is in effect asking the court to enforce the objectionable provision of the contract concerning bonuses. While the finding shows that the plaintiff has been repaid the large sum which, in accordance with the items of the contract, he paid as bonuses, he has not been fully paid, as the contract provided he should be, for his services in procuring such sales, and he is by this action asking for the payment of the remainder of the compensation which under the contract he was to receive for his services and expenses in making sales by the method provided by the contract.

The duty of the plaintiff under the contract, and the

real and only purpose for which he was employed, and for which he was to be paid, was to make sales of the goods manufactured by the defendant. What these goods were the contract does not indicate, any further than that they were goods to be sold by the gallon. The finding, however, states that they were varnishes. The plaintiff was to sell these goods to "railroads, steam, trolley," etc. The contract provided that in order to make such sales the plaintiff might pay bonuses to parties unknown to the defendant. It also contemplated the plaintiff would devote his time, wholly or in part, to the making of such sales, and would incur other expenses than the payment of the bonuses. For all such services and expenses, if the sales made between May, 1906, and May, 1907, did not reach $13,000, the plaintiff was to receive $2,000 per annum, the further sum of $100 per month, and, apparently, such sum as he should pay in bonuses to unknown parties not exceeding twenty-five cents per gallon.

In accomplishing the sales which he has made, it appears that the plaintiff has paid between $500 and $600 as bonuses, in accordance with the provisions of the contract. If these bonuses were intended to be paid, and were paid, as bribes to purchasing agents of the railroads to induce such agents to purchase the defendant's varnishes for their principals, or to afford such agents the opportunity of graft, which is the receiving of personal gain, without rendering compensatory services, by persons holding positions of trust and confidence, and is but a form of bribery (*State* v. *Sheridan,* 14 Idaho, 222, 93 Pac. 656; *Dixon* v. *Chappell,* 133 Ky. 663, 118 S. W. 929; *Quinn* v. *Review Pub. Co.,* 55 Wash. 69, 104 Pac. 181), if such, we repeat, were the purposes of these bonuses, this provision of the contract was intended to induce persons to violate the confidence reposed in them by their employers and

principals. Such an agreement is opposed to honesty in business. It is contrary to public policy. It is illegal, and the time spent and the expense incurred by the plaintiff in so accomplishing or attempting to so accomplish sales were as much a part of the illegal transactions as was the actual payment of the bonus itself. If such was the real character of this provision, the plaintiff could neither recover for services rendered, nor for expenses incurred, nor for bonuses paid in making the sales.

The law will not compensate the plaintiff for such act, or for any act or service or expense whatever rendered or incurred in the accomplishment or attempt to accomplish sales by such methods. The promise to pay for such services would be based upon an illegal consideration. Every contract the consideration of which is illegal is void, and so is every engagement which has such illegal contract as its basis, or which may properly be considered part and parcel of such contract. *Sturges* v. *Bush,* 5 Day, 452, 460. "Contracts which are opposed to open, upright and fair dealing are opposed to public policy. A contract by which one is placed under a direct inducement to violate the confidence reposed in him by another is of this character." *Rice* v. *Wood,* 113 Mass. 133, 135. "Courts not only redress fraud, but seek to prevent it, by removing temptation." *McDonald* v. *Haughton,* 70 N. Car. 393, 399. "The law avoids contracts and promises made with a view to place one under wrong influences; those which offer him a temptation to do that which may affect injuriously the rights and interests of third persons." *Bollman* v. *Loomis,* 41 Conn. 581, 584. Neither courts of law or equity are open to enforce such contracts. If both parties are *in pari delicto,* the courts will leave them where they find them. This rule, however, permits either party to plead and

prove by proper evidence the illegal character of the contract. *Funk* v. *Gallivan*, 49 Conn. 124, 128.

We come, then, to the question of whether the defendant should have been permitted to prove facts showing that, by the language used, the parties contemplated that the bonuses should be paid for corrupt and unlawful purposes.

An agreement to pay a bonus is not necessarily a corrupt and unlawful agreement. Generally a bonus is a sum given or paid beyond what is legally required to be paid to the recipient. The words "payment of a bonus" may also be used in the sense of payment of a bribe (Century Dictionary); of the payment of a sum to weaken or destroy the fidelity of a trusted agent.

The defendant had pleaded that the provision for the payment of bonuses to unknown persons was for unlawful purposes, and was void as contrary to public policy.

If, when read in connection with the entire writing, the provision in question was "ambiguous or of doubtful import," the defendant was entitled under its answer to present evidence showing in what sense the parties used the word "bonus"; *Adams* v. *Turner*, 73 Conn. 38, 45, 46 Atl. 247; *Parker* v. *Sheldon*, 69 Conn. 544, 552, 38 Atl. 212; *In re Curtis-Castle Arbitration*, 64 Conn. 501, 514, 30 Atl. 769; and that it was used with the intention of providing for the payment of bonuses for unlawful and corrupt purposes.

This rule does not permit either party to a contract to testify on direct examination what the intention of the parties was, or what his intention was, in using the words or terms of doubtful import, but only to prove facts and circumstances not inconsistent with the writing itself, tending to prove in what sense the parties used such words or terms. *Brown* v. *Slater*, 16 Conn. 192, 196; *Fairfield* v. *Lawson*, 50 Conn. 501, 510. Such

was the apparent purpose of the questions asked the plaintiff which were excluded.

We think the defendant was entitled to prove to whom, and under what circumstances, and for what purposes, the bonuses were in fact paid by the plaintiff, and that the court erred in excluding the questions asked of the plaintiff for that purpose, and in holding that the provision respecting the payment of bonuses was separable from those regarding the payment of the $2,000 a year, and the $100 a month.

There is error and a new trial is ordered.

In this opinion the other judges concurred.