THE KEX MANUFACTURING CO. *v.* PLU-GUM CO. ET AL.

(Decided April 30, 1928.)

*Mr. George W. Spooner,* for plaintiff.
*Messrs. Klein & Klein* and *Mr. Joseph L. Stern,* for defendants.

VICKERY, J. This cause comes into this court on appeal from the common pleas court of Cuyahoga county.

The plaintiff company brought its action in the court below to enjoin the defendant the Plu-Gum Company and certain others, individual defendants, from operating a repair tire concern, and it alleges that it purchased for $20,000 the business and patents formerly owned by the Plu-Gum Company, which patents or processes were used in the business of repairing and restoring tires, and that, on or about December 7, 1925, the plaintiff and the defendant the Plu-Gum Company entered into a written contract by the terms of which the Plu-Gum Company assigned its patents, and all rights to renewals thereof in the United States or anywhere in the world, to the plaintiff, and in the same contract agreed with plaintiff that it would not, either directly or indirectly, by use of the same process, or any similar process, enter into and carry on the business of repairing tires, anywhere within the United States, or in any other country in which a patent or any renewal thereof might be obtained, and that the contract was to last during the lifetime of the patent or any renewals thereof.

This contract was signed by both parties, and the consideration for it was $20,000, $12,000 of which was paid in cash, and $8,000 by promissory notes, which had been paid prior to the beginning of this action. Almost immediately after the signing of this contract and the turning over of the business that was sold by the defendant to the plaintiff, some of the other defendants, who were stockholders interested in the Plu-Gum Company, procured a simi-

lar process from the owner in the state of New Jersey, and immediately thereafter, in the same vicinity where their shop had been before located, started in the business of repairing tires in direct competition with the plaintiff company, and in violation of the terms of its contract; and so this action was brought, alleging that there had been a sort of subterfuge, and that the parties, other than the defendant the Plu-Gum Company, had in a measure entered into a conspiracy to get possession of the $20,000, and had made the business of the plaintiff company valueless by reason of the competition established; and the petition alleged that these individual defendants were parties to that sort of an understanding and agreement and were benefiting thereby, that the contract was arranged and the whole proceeding took place in the office of Eugene M. Klein, a lawyer, who is one of the defendants, and who, as one of them, is claiming the right to exercise the power of repairing automobile tires under the process obtained from a New Jersey patentee, and that therefore this injunction suit is brought, stating that plaintiff has no adequate remedy at law.

If this case is shorn of all unnecessary phraseology and allegations, the controversy amounts to this: Is such a contract valid or invalid? For we conceive, as the situation arises, that the patents have nothing to do with the lawsuit other than to determine the length of time that the contract is to be in force, for it must be remembered that it is not an infringement of the patent that is claimed in this case. If it were, that would have to be fought out in the United States court.

It is not claimed that the defendants are using the

same process covered by the patent sold to the plaintiff company, and I think it is admitted that it is another process, based upon another patent entirely. Therefore it would seem that the patent has nothing to do with the case, other than to mark out the term for which this contract is to last, which would be the lifetime of the patent or any renewals thereof.

Then we come back to the proposition: Was the contract that was made, whereby the plaintiff became the purchaser of this process and business, which prevented the defendant, either directly or indirectly from going into a like business anywhere in the United States, or in any country in which there might be a patent obtained, for the full length of time that the patent would have to run, a valid contract?

Now, shorn of all verbiage, this simply comes down to the question whether, to protect the purchaser of a business of tire repairing in the city of Cleveland, it is necessary to make a contract so broad and extensive that it covers the whole United States or more. It must be conceded that the tire repair business is a local business. People do not ship tires to be repaired from San Francisco to Cleveland. It is true the plaintiff might sell the article that is used under the patent that was sold to the plaintiff company anywhere in the United States, but, as already pointed out, the patent has nothing to do with it. It is the repair business under another patent, not the one sold to the plaintiff, that is in question. It is not necessary to mention the cases, but, giving a clear, succinct statement of the law upon contracts in restraint of trade, it will suffice to say that in the early history of the law such contracts

were held to be entirely void, because, as it was alleged, the state was entitled to the services of each of its citizens, and they could be more useful in the trade in which they were accomplished than in some other trade. Therefore any contract which would restrain the right of a man to conduct a business was held to be contrary to public policy and invalid, but, in the multiplicity of inventions and the extension of commerce and trade, the courts early had to depart from this original proposition, and so they adopted a policy, the effect of which was as follows: That, while it was true that contracts in total restraint of trade were still against public policy, those in partial restraint of trade were not necessarily so. It would depend upon the question of how extensive the contract in restraint of trade was, or for how long a time it should last, and the decisions of the courts, I believe, will be found to be uniform upon this proposition that a contract in restraint of trade in a reasonable area would not necessarily be invalid, unless it were unlimited as to time; and a contract which covered more territory than was necessary to protect the rights of the purchaser would, as a rule, be declared invalid. In other words, a contract which prevented a man from going into business over such a large area that it would serve no good to the purchaser, and prevent the state from having the use of the man's knowledge at all, was invalid; or, if it were over a restricted area, and were for all time, it would be invalid.

Now, with that in mind, what is the contract in the instant case, for, having eliminated the question of patent, the sole question is whether this contract was in restraint of trade, and was therefore invalid,

or void, under the authorities. If we eliminate the patent, as already stated, the whole business of the plaintiff company was to repair tires, using this patent process in doing so. Now, the repairing of tires is not a monopoly, nor can it be. There are thousands of institutions where tires are repaired in the United States, or in the state of Ohio. It is manifestly impossible for a repairer of tires to have them shipped for any great distance, because the freight or express upon them would be more than the cost of repair. So necessarily the repairing of tires must be a local business, and, with that in mind, in analyzing this contract, one will see how broad and wide it is, and I know of no contract that has been sustained under circumstances such as these. *The Diamond Match Co.* v. *Roeber case,* 106 N. Y., 473, 13 N. E., 419, 60 Am. Rep., 464, is authority for the proposition that a contract will be sustained where it covers practically the whole United States. But that is not this kind of a case. There are cases which cover a large part of the United States, but those are different than the case at bar. In other words, the contracts have been sustained when it was necessary to do so to preserve the business which was sold, and, if that covered a broader area than a local trade, a contract for that purpose for a reasonable time would be upheld, but no contract has been upheld where it is for all time, or where the time is so unreasonably long that it would necessarily forever prohibit the vendor from engaging in a like business.

We think, from all the authorities, that this contract was absolutely void as being against public policy. That being so, the plaintiff would not be

entitled to maintain its suit in injunction to prevent the defendant from starting a like business to repair tires under a different process even within a district which it might have been within the power to limit by contract, had the parties seen fit to so limit it; but this is an entire contract, and cannot be divided so as to make it cover a reasonable area. It must either fail or be good in its entirety, and we think the contract is so broad, both as to space and time, as to make it absolutely void, and therefore the plaintiff is not entitled to the relief prayed for.

It is further alleged by the plaintiff that it has no adequate remedy at law. If that is so, I wonder whether, if the allegations in the petition are true and can be proven, an action could not be maintained in conspiracy to recover damages for the fraud that has been practiced upon the plaintiff. The allegations of the petition are almost broad enough, if they could be proven, to make that sort of a remedy possible. It is not necessary for us to decide that question. We think that the contract is absolutely void, and therefore the plaintiff cannot maintain its suit for an injunction. I do not want it to be gathered from the fact that this contract is absolutely void that it would necessarily follow from that that plaintiff could not base an action for conspiracy upon the facts stated, because it might be, and is so hinted in the petition, that a part of the conspiracy was this contract, and I can conceive of an action being predicated in tort for conspiracy whereby the plaintiff could recover damages or the money it had paid, and plaintiff would not necessarily be thrown out of court because this court finds that the contract was void, for that might have been a part of

the means whereby the plaintiff was deprived of its money, but that is aside from this case.

We think, therefore, that the decree must be for the defendant, and a decree may be drawn in accordance with these views.

*Decree for defendant.*

SULLIVAN, P. J., and LEVINE, J., concur.