## Max Beit et al. *v.* Seymore J. Beit

Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js.

Argued October 8—decided November 23, 1948

*Francis F. McGuire,* with whom, on the brief, was *Morgan L. McGuire,* for the appellant (defendant).

*Charles Suisman,* for the appellees (plaintiffs).

MALTBIE, C. J.   This case involves issues as to the right of the vendors of an interest in a business to a declaratory judgment that a covenant in restraint of trade contained in bills of sale executed to carry out the bargain is unreasonable and unenforceable, and as to the conclusion of the trial court that it is illegal. From a judgment for the plaintiffs the defendant has appealed.

The finding, in which no material correction can be made, may be summarized as follows: The plaintiffs, husband and wife, were in partnership with the husband's two brothers and their wives.   The partnership operated three stores.   Two were large stores, one in New London and one in Norwich, engaged in the sale of groceries, fruits, vegetables, meats and dairy products, principally by self-service and on a cash-and-carry basis.   The third store was in Norwich and was engaged only in the sale of meats.   No wholesale business was done by the partnership, but large sales were made to some hotels and restaurants at a discount. The customers of the stores were almost exclusively residents of New London and the towns contiguous

thereto and of Mystic and Norwich and the towns contiguous thereto. The partnership had no special brands or exclusive rights to sell products. It carried the same general line of merchandise as did other competitive stores of a like nature, of which there were a number within New London county but outside the area served by the stores of the parties. We take judicial notice that the area of New London county is about 695 square miles, that ten of its twenty-one towns are not contiguous either to Norwich or to New London, and that the area of the ten comprises almost 60 per cent of the area of the county.

The plaintiffs sold their interest in the business to a son of one of the brothers, and to carry out the transaction each of the plaintiffs executed two bills of sale dated October 23, 1945. All the instruments contained a clause as follows: "I further expressly covenant and agree with this vendee, his heirs and assigns not to engage in the meat market or grocery business within the limits of New London County, Connecticut, for a period of thirty years, from this day." Previous to the sale the parties had not discussed the inclusion in the bills of sale of such a covenant, but the attorney for the partnership who drafted the bills inserted the covenant thinking that it would meet with the desire of the parties to do so and basing the provisions on what he believed would be fair and reasonable; nor was the covenant discussed when the instruments were executed. Later the plaintiff Max protested its inclusion, but this was upon a misunderstanding as to its purport, and when its effect was explained to him he expressed himself as satisfied with it, stating that neither he nor his wife intended ever to engage again in a business similar to that theretofore conducted by the partnership. Before bringing this action, however, he entered into negotiations to purchase a grocery and

food business in the town of East Lyme, a town in New London county but not contiguous to either Norwich or New London. When advised by the attorney who drafted the bills of sale that carrying on such a business would violate the covenant quoted above, he desisted from the negotiations, although otherwise he would have made the purchase. The plaintiff Max desires to engage in the retail grocery and meat business in New London county. This action was brought by writ dated October 24, 1946; and, while in the complaint as amended the plaintiffs sought both a judgment declaring the covenants illegal and to have the bills of sale corrected so as to omit them, the trial court granted no relief other than a declaratory judgment.

We are met at the outset with the question whether the plaintiffs are entitled to maintain an action seeking a declaratory judgment as to the legality of the covenant. The reason why such covenants are held to be unenforceable is that unless they meet certain criteria they constitute a restraint upon trade which is against public policy. *Styles* v. *Lyon*, 87 Conn. 23, 26, 86 A. 564; *May* v. *Young*, 125 Conn. 1, 5, 2 A. 2d 385; 119 A. L. R. 1445. A court will not grant any relief to a plaintiff who rests his claim upon an agreement which is against public policy, for that would be to lend its aid to an illegal transaction. *Smith* v. *David B. Crockett Co.*, 85 Conn. 282, 287, 82 A. 569; *Roberts* v. *Criss*, 266 F. 296, 301; 2 Page, Contracts (2d Ed.) § 1026. It is sometimes stated generally that the courts will not grant affirmative relief to the promisor in such a covenant by way of rescission or the like. *Manchester & L. R. Co.* v. *Concord R. Co.*, 66 N. H. 100, 102, 20 A. 383; 36 Am. Jur. 655. Where, however, the invalidity of the agreement is based on the fact that it is against public policy, we have found

only one decision which directly denies such relief to a promisor, and in that case it was pointed out that no public interests were involved. *National Harrow Co.* v. *Hench*, 76 F. 667, 670. On the other hand, it has been held that in a proper case equity will grant relief of that nature to the promisor on the ground that the agreement is against public policy. *Duval* v. *Wellman*, 124 N. Y. 156, 160, 26 N. E. 343; *Cox* v. *Donnelly*, 34 Ark. 762; 3 Pomeroy, Eq. Jur. (5th Ed.) § 941. Where a promisor in such an agreement seeks to have equitable relief based upon its illegality, the situation is very different from that presented where the promisee seeks to enforce it, for the promisor is not seeking to put it into effect but rather is asserting and furthering the public policy of the state. "The remedy of cancellation is simply the equitable proceeding identical with the setting up of the illegality as a defense to defeat a recovery at law, and thus get rid of the contract as a binding executory obligation." *Missouri, K. & T. Trust Co.* v. *Krumseig*, 77 F. 32, 42, 23 C. C. A. 1.

To permit a party who has voluntarily entered into such an agreement, for a valuable consideration perhaps in large part based on it, to escape the consequences of his acts, as is illustrated in this case, smacks of unfairness and savors of an encouragement to dishonesty. But the reason for permitting a promisor to prove the invalidity of the agreement was long ago stated by Lord Mansfield in *Holman* v. *Johnson*, 1 Cowp. 341, 343, when he said: "The objection, that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between

him and the plaintiff, by accident, if I may so say."
See *Funk* v. *Gallivan*, 49 Conn. 124, 128. To the con-
tention that a defense against the enforcement of such
an agreement by one who has received a valuable con-
sideration is unconscionable, the Supreme Court of
Illinois has said: "The answer to this is that in a situ-
ation of this kind the interest of the public, rather
than the equitable standing of individual parties, is
of determining importance. The defense is not here
allowed because the party raising it is entitled to any
consideration, but upon principles of public policy and
to conserve the public welfare." *Parish* v. *Schwartz*,
344 Ill. 563, 572, 176 N. E. 757. Speaking of the appli-
cation of the principle that one who is a party to a
fraudulent contract may defend against its enforce-
ment on the ground of the fraud, the Supreme Court
of Michigan states: "Quite likely at first blush we
react against such a rule. A deeds to B his farm to
defraud his creditors with an agreement that B shall
reconvey when requested. We do not admire the
sportsmanship of B when he refuses to reconvey, and
it may be that we are reluctant to refuse specific per-
formance to A. But if the rule were otherwise, it
would be an open invitation to all kinds of fraudulent
contracts." *Leland* v. *Ford*, 245 Mich. 599, 610, 223
N. W. 218; see 5 Williston, Contracts (Rev. Ed.) p.
4562. Indeed, if a defendant were forbidden to defend
against the enforcement of a contract as against public
policy because he had received a consideration, there
would be few cases where that defense could be made.

Professor Borchard cites several cases to support his
statement that a promisor is entitled to a judgment
that a covenant he has made is unenforceable as
against public policy. Borchard, Declaratory Judg-
ments (2d Ed.) p. 515. In most of these cases the
courts did render judgment holding the agreements to

be illegal, but without discussing the question whether to do so falls within the proper field of declaratory judgments. See also *Ertel Bieber & Co.* v. *Rio Tinto Co.,* [1918] A. C. 260, 275. Where a promisor seeks a declaratory judgment that a covenant he has made is unenforceable as against public policy, the case is stronger than it is where he seeks affirmative relief. Implied in his action is a willingness on his part to abide by the covenant if it is found to be legal; and if the court finds it not enforceable the public policy to which it runs counter is thereby maintained. If the fact that a promisor has received a valuable consideration does not preclude him from defending against the enforcement of a contract because it is against public policy, or from seeking affirmative relief against it by way of cancellation or the like, we cannot see why that fact should preclude him from seeking a declaratory judgment to determine whether or not it is an enforceable agreement. If the other conditions requisite for granting relief are present, there is no reason why he should not have a declaratory judgment as to the validity of the agreement. See *Schaefer* v. *First National Bank,* 134 Ohio St. 511, 519, 18 N. E. 2d 263. In the instant case a declaration that the covenant is unenforceable will determine the right of the plaintiffs to establish a grocery business within the area included in the agreement, and the parties are not left in uncertainty as to their rights, with the ultimate solution only to be reached when the plaintiffs have incurred expense in starting a business and the defendant has brought an action for an injunction or damages. *Sigal* v. *Wise,* 114 Conn. 297, 301, 158 A. 891; *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 673, 179 A. 195.

The complaint in this case, it is true, affirmatively alleged that the covenant in question constituted an

unreasonable restraint of trade, and the pleading was addressed rather to the affirmative relief the plaintiff was seeking than to a prayer for a declaratory judgment. It did not accord in certain respects with a proper complaint seeking a declaratory judgment. Practice Book §§ 250, 251, Forms No. 497-499. The only claim the defendant makes in this connection is, however, that there was no actual bona fide and substantial issue in dispute between the parties but only an academic question. The trial court reached a contrary conclusion. This is supported by the finding that the plaintiff Max had entered into negotiations to purchase a grocery and food business and had only desisted when advised that it would be contrary to the covenant in question to carry on the business, and by the finding that he desires to go into the retail grocery and meat business in the county. In view of these facts, together with the denial by the defendant of the allegation in the complaint that the covenant constituted a bargain in unreasonable restraint of trade, and the whole course of procedure at the trial and before us, the trial court's conclusion is amply supported.

We cannot hold that the trial court could not properly reach the conclusion that the covenant constituted a restraint of trade which was greater than was necessary for the protection of the business of the defendant, which imposed an unnecessary hardship upon the plaintiffs and which was unreasonable. *Styles* v. *Lyon,* 87 Conn. 23, 26, 86 A. 564; *Samuel Stores, Inc.* v. *Abrams,* 94 Conn. 248, 253, 108 A. 541; *May* v. *Young,* 125 Conn. 1, 5, 2 A. 2d 385; *Sivley* v. *Cramer,* 105 Miss. 13, 61 So. 653; *Herreshoff* v. *Boutineau,* 17 R. I. 3, 7, 19 A. 712; Restatement, 2 Contracts, § 515, p. 990, illust. 2; 5 Williston, Contracts (Rev. Ed.) § 1636. The defendant claims, however, that the trial court should at least have held it valid

with respect to Norwich, New London and the towns contiguous thereto. In *Samuel Stores, Inc.* v. *Abrams,* supra, we had before us a covenant in an agreement for the employment of a manager of a clothing store that he would not become connected, for a period of five years after the employment ceased, with any firm engaged in a business similar to that of the employer which would compete with the latter's business. The employer had stores in several cities. We stated (p. 255) that the agreement included a number of cities in which the manager, from his employment in one city, could have had no acquaintance with the local customers; and we held the covenant to be unreasonable and unenforceable, making no distinction between the city where the manager had been employed and other cities included in the agreement. An examination of the record and briefs in that case discloses, however, that no claim that the agreement was divisible was made. In *Torrington Creamery, Inc.* v. *Davenport,* 126 Conn. 515, 12 A. 2d 780, we had before us a covenant in an agreement of employment in which the defendant agreed not to engage in the same business as that of the employer plaintiff in several named towns in Litchfield county, in one of which the defendant had been in charge of the plaintiff's business. The plaintiff only sought to enforce the agreement in that town and an adjoining town served by the same branch of its business. Although pointing out that enforcement was sought only in the two towns where the defendant had special knowledge of the plaintiff's customers, we said (p. 520) that the contract by its terms was divisible. While the statement was unnecessary to the decision, there is much authority to the effect that in such a situation the covenant often may be interpreted to be severable as regards the various places named. 5 Williston, op. cit., § 1659.

Whether the promises in a contract will be treated as severable or not is primarily a matter of the intent of the parties, determined by a fair construction of all the provisions of the contract. *Bridgeport* v. *T. A. Scott Co.*, 94 Conn. 461, 465, 109 A. 162; *Trenton Potteries Co.* v. *Oliphant*, 58 N. J. Eq. 507, 517, 43 A. 723. There is undoubtedly a strong tendency on the part of courts to regard as divisible restraints of trade which are unreasonable in the extent of area covered and to hold them invalid only so far as necessary for the protection of the covenantee, where the terms of the promise permit that to be done without clearly violating the intent of the parties. 5 Williston, op. cit., § 1659; Restatement, 2 Contracts, § 518. Professor Williston advocates a broader rule to the effect that, even though a covenant in restraint of trade was regarded by the parties as indivisible, it should be given effect to the extent to which the court finds that it would not be unenforceable. 5 Williston, op. cit., § 1660. This proposition finds support in a line of Massachusetts cases of which the earliest seems to have been *Edgecomb* v. *Edmonston*, 257 Mass. 12, 19, 153 N. E. 99, and the latest, *Metropolitan Ice Co.* v. *Ducas*, 291 Mass. 403, 405, 196 N. E. 856, and in a few decisions elsewhere. *Hill* v. *Central West Public Service Co.*, 37 F. 2d 451, 452; *Davey Tree Expert Co.* v. *Ackelbein*, 233 Ky. 115, 120, 25 S. W. 2d 62. The difficulty with that position is that it gives effect to the conclusion of a court as to the extent to which a covenant unreasonably broad in its terms can in fairness and equity be enforced rather than to the intent of the parties, who, had they desired a narrower provision, should have agreed upon it. See *Davies* v. *Davies*, 36 Ch. D. 359, 387, 393; *S. V. Nevanas & Co.* v. *Walker & Foreman*, [1914] 1 Ch. 413, 424. In Pollock, Contracts (11th Ed.), page 335, the rule is stated

as follows: "A restrictive covenant which contains or may be read as containing distinct undertakings bounded by different limits of space or time, or different in subject-matter, may be good as to part and bad as to part. But this does not mean that a single covenant may be artificially split up in order to pick out some part of it that can be upheld. Severance is permissible only in the case of a covenant which is in effect a combination of several distinct covenants." Where the covenant is intended by the parties to be an entirety, it cannot properly be so divided by a court that it will be held good for a certain area but invalid for another; indeed, as the trial court well states in its memorandum of decision, this would be to make an agreement for the parties into which they did not voluntarily enter. *British Reinforced Concrete Engineering Co., Ltd.* v. *Schelff*, [1921] 2 Ch. 563, 572; *Mason* v. *Provident Clothing & Supply Co., Ltd.*, [1913] A. C. 724, 745; *Consumers' Oil Co.* v. *Nunnemaker*, 142 Ind. 560, 568, 41 N. E. 1048; *Wisconsin Ice & Coal Co.* v. *Lueth*, 213 Wis. 42, 47, 250 N. W. 819; *Kex Mfg. Co.* v. *Plu-Gum Co.*, 28 Ohio App. 514, 519, 162 N. E. 816; 2 Page, Contracts (2d Ed.) p. 1389. In the instant case there can be no doubt that the parties intended the covenant to apply to all of New London county, not to a portion of it left wholly indefinite by the terms of the agreement. The trial court correctly so concluded.

There is no error.

In this opinion JENNINGS and DICKENSON, Js., concurred.

BROWN, J. (dissenting). I am unable to agree with the majority opinion in so far as it holds that the plaintiffs are entitled to maintain an action for a declaratory judgment to determine that the contract

was invalid. It is therefore my conclusion that there was error and judgment should be directed for the defendant.

Assuming that the trial court was correct in concluding that the restrictive covenants in question were "against public policy, invalid and unenforceable in toto," it of course does not necessarily follow that the plaintiffs are entitled to affirmative relief by declaratory judgment. Our decisions have recognized, as the two principal considerations affecting the validity of restrictive contracts on grounds of public policy, (1) injury to the public because it is deprived of the restricted party's industry or services, and (2) injury to the party himself by reason of being precluded from pursuing his occupation and thus being prevented from supporting himself and family. *May* v. *Young*, 125 Conn. 1, 5, 2 A. 385; *Styles* v. *Lyon*, 87 Conn. 23, 27, 86 A. 564; note, 119 A. L. R. 1452. The record suggests no other significant element in this case. It was the occupation of the plaintiffs in conducting a meat and grocery business only that was involved. Since the court has found that in New London, Groton and Waterford alone there were more than 300 stores where business of this nature was carried on, it is manifest that the conclusion quoted was based upon the effect of the restriction on the plaintiffs themselves, as distinguished from any effect it might have upon the public. This is confirmed by the fact that the court's finding contains the conclusion that the restriction would impose an undue hardship on the plaintiffs but is silent as to any effect upon the public.

A decision which establishes the right of a person, who today has executed such a restrictive contract as here for a substantial consideration paid, to procure tomorrow a decree of court which effectively determines that no liability rests upon him under this con-

tract and that he can keep the consideration he has received may well constitute a potent temptation to fraud and place a premium upon dishonesty. Accordingly, the decision of this case involves not only the question whether the terms of the contract itself were contrary to public policy but the further question whether to aid the plaintiffs by granting the relief sought violates the sound public policy of fostering rectitude and integrity and discouraging fraud and dishonesty in business dealings. It can hardly be maintained that honesty in business is any less the concern of public policy than is restraint against competition. See *Smith* v. *David B. Crockett Co.*, 85 Conn. 282, 287, 82 A. 569. It is my conclusion upon the broad question of public policy involved that the importance of so fostering honesty rather than dishonesty far outweighs any possible adverse effect that might result to these plaintiffs by a judgment for the defendant.

The majority opinion recognizes that to sustain the judgment for the plaintiffs and thus enable them to escape the consequences of their acts "smacks of unfairness and savors of an encouragement to dishonesty." It cites no authority setting forth logical and convincing reason for granting affirmative relief by declaratory judgment under these circumstances but bases its reasoning on the principle that a defendant when sued upon such a contract may defend upon the ground of its illegality, because the objection on this ground "is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say." *Holman* v. *Johnson*, 1 Cowp. 341, 343. Sustaining illegality as a defense, however, and recognizing it as a basis for affirmative relief are two very different things. That the former was the full

extent of the principle enunciated by Lord Mansfield in the words just quoted is clear from this further language of his, which follows that relied upon by the majority: "So if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it [the illegality of the contract]; for where both are *equally* in fault, *potior est conditio defendentis.*" This limitation upon the principle has been recognized repeatedly by this court. Thus, after quoting from the above case with approval, we went on to say: "The law could not take any other position than that it will not lend its aid to either of the parties to an unmoral or illegal transaction, but will leave them as it finds them. . . . 'The purpose of the rule of law . . . is . . . to deprive the parties of all right to have either enforcement or relief from their illegal contract. . . . The court . . . simply refuses its aid to undo what the parties have already done.'" *Funk* v. *Gallivan,* 49 Conn. 124, 128. Again we stated: "Neither courts of law or equity are open to enforce such contracts. If both parties are *in pari delicto,* the courts will leave them where they find them." *Smith* v. *David B. Crockett Co.,* 85 Conn. 282, 287, 82 A. 569. The majority opinion cites no decision of this court which either overrules or qualifies this language.

To my mind, the reasoning in the majority opinion that the rule of in pari delicto does not bar recovery by these plaintiffs, since they are not seeking to enforce but only to avoid the restrictive covenants, is strictly legalistic and entirely unrealistic. In my judgment it cannot be fairly maintained that this rule is inapplicable for the reason that an action for a declaratory judgment is not one seeking affirmative relief. Such a judgment, in the present case, not only affords

as effective affirmative relief as could be had in an equitable action for rescission or cancellation but furthermore accomplishes the exact result which the doctrine of in pari delicto is designed to prevent. In fact, it nullifies the provisions of the contract and relieves the plaintiffs of all their obligations not only as effectively and affirmatively as a decree of rescission or any other remedy could but in terms more advantageous to them. This being so, that the judgment, as the majority opinion states, would enable the plaintiffs to resume business in the forbidden area and the parties would not be "left in uncertainty as to their rights, with the ultimate solution only to be reached when the plaintiffs have incurred expense in starting a business and the defendant has brought an action for an injunction or damages" shows no ground for sustaining it. For the reasons already pointed out, it would be more in keeping with sound public policy to permit to continue operative whatever restraint upon the plaintiffs' activities their uncertainty as to the contract's validity might afford. The majority opinion, in arguing justification for a declaratory judgment, cites three authorities as suggesting that "in a proper case" affirmative equitable relief may be accorded a plaintiff where a question of this nature is involved. Even if the rule laid down in the two Connecticut decisions quoted above is to be disregarded, the case before us could not be "a proper case," for the reasons already stated.

For these reasons I conclude that there was error and that judgment should be directed for the defendant.

In this opinion ELLS, J., concurred.