[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff seeks to enjoin its former employee until April 30, 1992 from violating a covenant not to compete by continuing employment with Meta Group which the plaintiff alleges (a) was formed by the plaintiff's ex employees and, (b) is engaged in direct competition with the plaintiff.
The plaintiff is engaged in providing information technology concerning trends and advancements in the computer field. Both the plaintiff and Meta Group are two of six such companies in the world. The plaintiff is much larger than Meta Group as evidenced by the following facts: it has fifty sales persons compared to Meta Group's eight; the plaintiff has twenty-one offices in thirty countries including eleven of the states, Canada, South America, Europe, the Middle East and Far East; in contrast, Meta Group's only office is in Connecticut.
In 1981, the plaintiff hired the defendant as its Director of Marketing. In 1987 the defendant was promoted to Vice-President of Market Development which carried a base salary of $95,000. with annual bonus potential of $30,000. In this position the defendant engaged in the following activities: (i) participated in major company decisions, (ii) developed over thirty six hundred business prospects, (in) became aware of all existing and planned future company products, (iv) devised a written plan on how to develop European prospects, (v) became familiar with company client based customer lists, marketing strategies as well as the range of customer satisfaction and dissatisfaction.
In February 1989 along with several other key employees the defendant was asked to sign a "confidentiality agreement" in return for which the plaintiff agreed to place $36,000. in a tenure fund for the defendant's account. This fund was to be paid to the defendant on March 31, 1993 provided he signed the "confidentiality agreement" and adhered to its terms. There were other conditions but they are not material. The defendant signed the agreement and is now 30% vested in the tenure fund.
In April 1991 the plaintiff reorganized the defendant's department for budgetary reasons and eliminated his job. As a result, the defendant was offered the position of Director of Marketing for Research Products, carrying an annual salary of $65,000. plus 15% commission on departmental revenues in excess $800,000. The defendant terminated his employment with the CT Page 900 plaintiff on May 1, 1991 and went to work for Meta Group in June of that year at a higher rate of pay.
Because the covenant sought to be enforced expires on May 1, 1992 it is likely that any temporary relief granted at this juncture will for all practical purposes constitute the permanent relief.
I. CONSIDERATION
The defendant's threshold defense to this action is that the agreement of August 16, 1989 is not supported by good consideration. It is argued that to constitute consideration the plaintiff must have paid the defendant the tenure fund money at the time he signed the agreement. He further argues that the fact that the plaintiff promised to pay it at some future date or is entitled to withhold it if certain conditions are not met vitiates the consideration.
Good consideration for a similar contract containing substantially the same elements was found in DePova v. Camden Forge Company 254 F.2d 248 (3rd. Cir. 1958); 1A Corbin, Contracts Sec. 186 at 163. As Professor Simpson explains "a promised performance expressly conditioned upon the happening of an uncertain future event is sufficient consideration for a counter-promise. If the event fails to happen the promise is performed with no resultant detriment or benefit, yet the chance that the condition may happen involves sufficient possibility of detriment to constitute consideration, Simpson on Contracts, 1954 Ed. at 89. This defense is without merit, Torrington Creamery Inc. v. Davenport 126 Conn. 516,520. Nor does a termination of employment at the initiative of the employer render the non-competitive provision invalid, Robert S. Weiss and Associates Inc. v. Wiederlight 208 Conn. 525,532.
II. THE RESTRICTIVE COVENANT
The defendant next argues that the restrictive covenant is void as constituting an unreasonable restraint of trade and therefore, is against public policy May v. Young 125 Conn. 1. The terms of the covenant are as follows:
 After the termination, for any reason, of the employment with GG, I agree that for a period of twelve months following such termination I will not compete with GG by developing, marketing or assisting others to develop or market a product or service which is competitive with the products or services of GG then existing or planned for the future, which I learn of or develop while an employee of GG. I further agree that for the same period following such termination, for any reason, I CT Page 901 will not accept employment from or have any other professional relationship with any entity which is competitive with the products or services of GG then existing or which were known by me to be planned for the future. The foregoing restrictions shall apply at all geographical areas where I performed services for GG prior to such termination, and at all other places where GG does business and/or did business during the term of my employment, including, but not limited to the States of Connecticut, New York, and Massachusetts, and at all , places where during my employment with GG, the company had plans or reasonable expectations to do business in the future.
Before undertaking to analyze this provision for restraint of trade it is necessary first to determine whether the essential ingredient of all injunction actions is present, namely whether there is a substantial threat of immediate irreparable harm which will occur to the plaintiff if the relief requested is not granted. Silitschanu v. Groesbeck 12 Conn. App. 57, 64. While ordinarily proof of imminent irreparable harm is essential, in this type of case there is no such requirement. It has long been recognized in this state that a restrictive covenant is a valuable business asset which is entitled to protection. Torrington Creamery Inc. v. Davenport, supra at 521. Irreparable harm would invariably result from a violation of the defendant's promises Matis v. Lally.138 Conn. 51, 56; Welles v. O'Connell 23 Conn. Sup. 335, 337. The reason for this is that such a plaintiff's actual injury is not susceptible of determination to its entire extent but is estimable largely by conjecture and prediction. Case v. Zeiff 10 Conn. Sup. 530,532. The very nature of the defendant's conduct is such that its real impact will not be felt fully for several years in the future. In this case the defendant's competitive activities carried out within the year in question are likely to produce harmful effects in subsequent years in expanding geometric progression. As the court said in Gordocki v. Goldring Home Inspections, Inc.6 C.S.C.R. 988 (November 18, 1991, Hodgson, J.) "while the [defendant] plaintiff could maintain a claim for damages as to each violation that causes injury the difficulty of proof and the inefficiency of repetitive suits render inadequate the use of successive remedies at law, and injunctive relief is therefore warranted to protect the defendant from harm which the restrictive covenant was intended to prevent. Berin v. Olson. 183 Conn. 337,342.
Next, the court must evaluate the terms of the covenant to determine its enforceability. The first inquiry is as to reasonableness of time and place Scott v. General Iron and Welding Company, 171 Conn. 132, 137. Although the covenant here is one ; year in duration the plaintiff has asked that the injunction extend only to and including April 30, 1992. Even the defendant does not challenge the covenant on this ground. Rather he relies on the CT Page 902 geographic area as being overly broad. The validity of the geographic limitation must be assessed in conjunction with the time limitation as all of the factors which affect the covenant's validity are to be considered together. Robert S. Weiss and Associates Inc. v. Wiederlight supra at 529.
There is little doubt that this covenant was intended to cover a very broad universe, including places where the company "had plans or reasonable expectations to do business in the future". This portion of the provision suffers from a number of serious infirmities. First, it is vague and indefinite as to location. Secondly, it is entirely subjective and changeable at the caprice of the employer. Finally, since it extends to potential new customers it is not circumscribed by a reasonably limited market area. Robert S. Weiss and Associates Inc. v. Wiederlight, supra at 533. Such a restriction exceeds the scope of what is necessary to afford fair protection to the plaintiff's interest, Torrington Creamery Inc. v. Davenport supra at 519, and thus on its face is invalid and unenforceable.
The second territorial problem arises from the prohibition against competing in "all geographical areas where [the defendant] performed services for [the plaintiff] prior to "termination and all other places where [the plaintiff] does business and/or did business during the term of [the] employment". Because the geographic area to which this covenant applies is totally unlimited it is plainly suspect and deserves added scrutiny. This provision is in some ways similar to the covenant involved in Wiederlight, supra, only in that case the covenant applied to the plaintiff's accounts as they existed when the plaintiff terminated. Unlike Wiederlight, the subject covenant does not apply to existing companies or clients, but rather to places where the defendant performed services regardless of the nature of the service or the capacity in which they were performed. Thus, the defendant would have performed a service by making a hotel reservation for the plaintiff's staff but such a service could hardly be claimed to have implicated any aspect of the competitive nature of the plaintiff's business. Next, the prohibition extends to all the other places where the plaintiff does business and/or did business during the employment term. The validity of this prohibition is more difficult to determine. "The fact that an employer seeks to protect his interest in potential new customers in a reasonably limited market area as well as his existing customers at the time the employee leaves does not render the covenant unreasonable." Robert S. Weiss and Associates Inc. v. Wiederlight, supra at 533.
The covenant in question fails the test in two major respects. First, it does not prohibit solicitation of customers who are readily identifiable but it goes beyond that objective standard and embraces the place or geographic area in which the customer is CT Page 903 located without defining its limits. Clearly, the scope of the customer's business could easily extend beyond the boundaries of the locality in which it is located. Secondly, it includes areas where the plaintiff did but no longer does business concerning which the plaintiff would have only a speculative and remote protected interest which might or might not be asserted in the future. Such unreasonable overbreadth renders this portion of the covenant-likewise void and unenforceable.
But this does not end the inquiry because the remainder of the covenant carves out distinctly identifiable geographic areas which may be severable from the invalid portion of the covenant. Whether severance is appropriate depends primarily upon the intent of the parties as determined by a fair construction of the language they used Beit v. Beit 135 Conn. 195, "A restrictive covenant which contains or may be read as containing distinct undertakings bounded by different limits of space or time, or different in subject-matter, may be good as to part and bad as to part. But this does not mean that a single covenant may be artificially split-up in order to pick out some part of it that can be upheld. Severance is permissible only in the case of a covenant which is in effect a combination of several distinct covenants. Where the covenant is intended by the parties to be an entirety, it cannot properly be so divided by a court that it will be held good for a certain area but invalid for another". Beit v. Beit, supra at 205. As this court said in Beit v. Beit at 15 Conn. Sup. 191, 196 "this is the so called blue pencil rule and applies only to cases where the contract in terms specifies several distinct areas, so by erasing the description of one or more of these areas there is left the description of an area for which the restriction is reasonable", all without rewriting the contract.
Consistent with the above, the covenant goes on to provide that competitive conduct is to be proscribed specifically in the states of Connecticut, New York and Massachusetts. The question is whether such geographical limits save the covenant because they are not unreasonable and therefore, may be preserved by the blue pencil. As to reasonableness, there was ample testimony that a significant portion of the plaintiff's business is derived from these states with its headquarters being located in Fairfield County, Connecticut and a branch office in Massachusetts. Based upon the evidence, this court holds that these three states comprise a reasonably limited market area for the plaintiff and therefore comprise a valid restriction. It must now be determined whether this area can be severed from the rest; in other words, the good from the bad.
To determine the intent of the parties the language of the covenant must be examined in light of paragraph nine of the agreement which provides as follows: CT Page 904
 If any provision or clause of this Agreement, or portion thereof, shall be held by any court or other tribunal of competent jurisdiction to be illegal, valid, or unenforceable in such jurisdiction, the remainder of such provision shall not be thereby be affected and shall be given full effect, without regard to the invalid portion. It is the intention of the parties that, if any court construes any provision or clause of this Agreement, or any portion thereof, to be illegal, void or unenforceable because of the duration of such provision or the area or matter covered thereby, such court shall reduce the duration, area, or matter of such provision, and, in its reduced form, such provision shall then be enforceable and shall be enforced.
It is obvious that the parties contemplated the very direction which this case has taken and have clearly and effectively provided for it. Even the language of the covenant as drafted lends itself to divisibility and severance. The very act of singling out these states from the rest of the world signifies this intent and enables the court to excise the defective parts and preserve the effective ones. Timenterial Inc. v. Dagata 29 Conn. Sup. 180.
In similar fashion the covenant prohibits not only engaging in competition but also prohibits accepting employment with any competing entity. Since the court has invalidated most of the covenant, leaving effective only three states, a blanket prohibition against employment with such a firm would be inconsistent with this ruling. Accordingly, the defendant is enjoined and prohibited through and including April 30, 1992, from utilizing his employment with Meta group to compete with the plaintiff as to existing and potential customers within the states of Connecticut, Massachusetts and New York.
Because the court has treated this case as one for a permanent injunction covering a brief period, the requirement for bond is waived.
MOTTOLESE, J.