[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
1. Dissolution of the Marriage
It is found that all of the allegations of plaintiff's complaint have been proved, that the marriage has broken down irretrievably, and the marriage is ordered dissolved for that reason.
2. The Resolution of Disputed Values of the Family Owned Business
CT Page 1959
The establishment of the fair market value of the jointly owned family business is unquestionably the most daunting task facing the court in this matter. The business, started in April 1987 by the defendant, was incorporated in January 1989 under the name Office Concepts, Inc., with plaintiff becoming a 51 per cent shareholder and defendant owning the balance of 49 percent of the stock. The company recommends and designs painting, carpeting, furniture and the like for various business entities as well as decorating and selecting colors for them. It subcontracts out complex problems, manages all purchase orders and follows through on all projects to installation. In the past the company has had at most five employees, including the parties. In the delegation of company duties plaintiff managed the office, hired employees, and performed secretarial duties, including oversight of the accounts receivable. Defendant was the salesman, devoting all of his time and effort to obtaining and retaining customers as clients for the company.
All went well for the company until the institution of this dissolution action. Plaintiff removed herself from the business on April 15, 2000 and is presently employed as a project manager for a local architectural firm.
During the trial plaintiff produced as a witness Gregory R. Marsh, a member of the National Association of Certified Business Evaluators, whose expertise in the valuation of businesses was stipulated to by the parties. Mr. Marsh stated that the standard of value for marital dissolution purposes in a privately held company was the I.R.S. definition of fair market value, i.e. "the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having knowledge of the relative facts." Initially Mr. Marsh valued the business as of January 31, 2000 and as of March 31, 2000. Following the suggestion of the court that it would be more particularly concerned with the value of the business on the date of dissolution, Zern v. Zern, 15 Conn. App. 292, 296
(1988), he later testified that its present fair market value was $320,000, that plaintiff's 51 percent share was valued at $163,200 and defendant's minority interest was valued at $87,808.
Alan Friedman, a certified public accountant who in the past had advised the plaintiff on tax and business matters also testified on her behalf. He concluded that in the event all its assets were sold, the liquidated value of the business would be $130,000.
Alan J. Nathan, a certified public accountant since 1983, testified on behalf of the defendant that not surprisingly a seller usually recovers less financially on a liquidated sale. He offered little else of CT Page 1960 assistance to the court.
During the trial it was noted that Mr. Marsh's fair market value of the business was based on the sellers providing the buyer with a covenant not to compete. Defendant during the trial made it quite clear that he would prefer to continue the business and that under no circumstances would he provide a prospective purchaser with a covenant not to compete. Inasmuch as a large part of the success the business has enjoyed over the years appears to have resulted from defendant's salesmanship and his business contacts cultivated over time, the absence of such a covenant would have an adverse effect upon the fair market value of the business.
Plaintiff in his proposed orders observes that a private sale of the business would not be "the most cost effective result in this action" and suggests that the court order the business to be sold and that "both parties execute a reasonably limited noncompete in connection with any such sale." For a variety of reasons outlined below, this court declines to accept plaintiff's invitation to enter this legal minefield.
As stated in Beit v. Beit, 135 Conn. 195, 208 (1948) there are two principal considerations affecting the validity of covenants not to compete "on grounds of public policy (1) Injury to the public because it is deprived of the restricted party's industry or services, and (2) injury to the party himself by reasons of being precluded from pursuing his occupation and thus being prevented from supporting his wife and family." Simply put, even where the parties are both willing, such covenants often are held to be unenforceable because "unless they meet certain criteria they constitute a restraint upon trade which is against public policy." Beit v. Beit, p. 188 (supra).
In the best of circumstances, where the parties are knowledgeable in a particular business and are in complete agreement, such a covenant must be carefully crafted. To order a sale with a covenant not to compete where such a sale is opposed by an unwilling owner would either deprive the seller of his livelihood or deprive the buyer of the full measure of his purchase. In either event such a result is unwanted as well as improper.
Because it believes that to do so would be against public policy, this court will not order the sale of the family owned business with an accompanying covenant not to compete. Rather, because it believes on the evidence that the business owes much of its success to the personality and salesmanship of the defendant, it determines that the liquidated value of the business should be used in establishing the marital estate of the parties and that Sec. 46b-82 C.G.S. ("the court shall consider xxx the award, if any, which the court may make pursuant to Section 46b-81") be utilized to address any potential inequities resulting therefrom. CT Page 1961
This court determines the value of Office Concepts, Inc. for marital distribution purposes to be $130,000.
3. The Marital Assets of The Parties
 Plaintiff (Wife)
 One half interest in 40 Indian Hill Road, Farmington, CT
 Total value $283,500 Less Mtg. — 59,476
Total Equity 224,024
One-half interest $112,012 $112,012
 Household furniture — 140 Shares — Simsbury Bank 2,450 at $17.50 per share
 Office Concepts, Inc. 51% interest — total value $130,000 66,300
 Life Insurance Policy F.V. $250,000 C.S.V. 0
Simple I.R.A. Am. Scandin 7,497
 Webster Bank C/A $1,000 1,695 M/M/A 695
3. U.G.M.A. Accounts for the children — of the Parties Plaintiff — trustee ___________ Subtotal $189,954
Defendant (Husband)
 One-half interest in 40 Indian Hill Road, Farmington, CT
one-half of equity $112,012
Simple I.R.A. ASAF Janus 4,266 Roth I.R.A. (A) CT Page 1962 Putnam M/M/A Roth I.R.A. Putnam Global Growth C 2,663
L.P.L. SARSEP $102,057
 1998 Acura total value $15,000 — loan 1,000
 Total Equity $14,000 $ 14,000 (J/T O drives)
 1993 Jeep Grand Cherokee $ 5,000 (P. drives)
 140 shares of Simsbury Bank $ 2,450 7 shares of Ames Dept. Store —
 Office Concepts, Inc. $ 63,700 (49% interest)
 Life Insurance Policy F.V. $600,000 C.S.V. —
 Farmington Savings Bank $ 317 __________ Subtotal $306,465
Total Marital Estate $496,419
4. A Review and Evaluation of the Evidence in Accordance With the Provisions of Sec. 46b-81c C.G.S.
A. General Background Information
The plaintiff wife, who is forty-three years old, and the defendant husband, who is fifty years of age, were married on June 26, 1981, twenty years ago. They have two children, a son Mark who is eighteen years of age and a senior in high school, and a daughter Elizabeth who is fourteen years old and who attends a local school. The parties jointly own a single family dwelling in Farmington, Connecticut which was purchased in 1986 and where plaintiff and the two children of the parties presently reside.
B. Education and Employment History of the Parties
CT Page 1963
Plaintiff graduated from high school and thereafter took courses in communications and real estate. She types sixty words a minute and considers herself to be computer literate. Prior to her association with Office Concepts, Inc. she worked as a legal secretary for five years. She left the family business on April 15, 2000, when this dissolution action began. Thereafter she worked for a short period of time for a company manufacturing office furniture and in April, 2000 began her present employment as a project manager with Kaestle Boss Associates Architects. She describes herself as an interior coordinator and stated that her position entails "assisting clients through the bid process for schools primarily." Her gross weekly income from her employment is $866 with a weekly net of $663 after the usual deductions. of her present position she stated "my present job is wonderful — my employer is extremely pleased with me."
Neither the court's notes nor defendant's proposed orders provide any information concerning defendant's education. Prior to becoming involved with Office Concepts, Inc. he sold furniture. Since 1987 he has concerned himself with the family business where he serves as president. He presently has a gross weekly income of $1,442 as reflected on his current financial affidavit with a net weekly income of $983 after the usual deductions. In describing his business, defendant testified that "I'm a key player, I solicit business, am involved in selling — now I do the administrative work too — we concentrate on commercial business — the company had gross sales of between $1.5 and $1.6 million dollars in 2000 — all of 2001 was recessionary."
C. Health
 Plaintiff
With regard to her health plaintiff testified as follows: "My health was fairly good until the divorce. I had two biopsies that were negative. For a while I was severely depressed, but I am no longer taking medication for this. I've attended marital and individual counseling sessions. I've lost thirty pounds over the last 1-1 1/2 years. I have nodules in my thyroid which I have checked every six months." She stated further that "I currently have no physical or psychological problems affecting my work."
Defendant
Defendant made no reference to the state of his health, but appeared to be in good physical condition.
D. Fault
CT Page 1964
A brief summation of the testimony of the parties on this factor follows:
Plaintiff
Plaintiff stated candidly that "both parties contributed to the breakdown of the marriage. I allowed my husband to control my life without giving me freedom to do something on my own. I used to like to go to singles bars and pizza parlors. He objected. I'd go out to places in a group on soccer overnights. If I went to the mall he would get upset and we'd have major fights. Our evenings out together were either birthdays or anniversaries." Plaintiff mentioned that for the past five or six years she has been interested in playing soccer and during the season practiced twice a week and played one game a week. During her cross examination she testified that "before the separation I'd spend $500-$1,000 per week on clothes but (her husband) never complained about my spending the money."
She concluded by stating that "I permitted him to control me verbally and psychologically. I was and am still afraid of him."
Defendant
Defendant, referring to the breakdown of the marriage, testified that "she decided that she didn't want to be married to me anymore. At the end of our marriage she would go out with her girlfriends every Friday night. She'd wake me up when she came home at 1-2 a.m. I spoke to her about this but it didn't seem to faze her, I never threatened to kill her. I did tell her to come home by 10-11 p.m., that after midnight wasn't a good idea. Her spending was never a problem during the marriage."
The court concludes that responsibility for the irretrievable breakdown of the marriage rests equally with both parties.
E. Other Factors
The defendant's opportunity for the future acquisition of capital assets and income exceeds that of plaintiff. Defendant's contribution in the past to the marital estate has exceeded that of plaintiff.
The liabilities of the plaintiff far exceed those of the defendant. Their needs are similar.
CONCLUSION
CT Page 1965
Having considered and weighed all of the evidence as it relates to Sec. 46b-81c C.G.S., this court orders that the marital estate of the parties be divided equally between them, i.e.
Plaintiff 50 percent share
Defendant 50 percent share
5. The Distribution of the Marital Estate in Accordance With the Findings Made in Article 4 (supra)
 Total Marital Estate $496,419 Plaintiff's one half share 248,210 Defendant's one half share 248,209
 Plaintiff Shall Take and Have
 40 Indian Hill Rd, Farmington, CT Total equity $224,024 Household furniture — 140 shares-Simsbury Bank Trust Co. 2,450 1993 Jeep Grand Cherokee 5,000 Simple I.R.A. AM Scandia 7,497 Webster Bank C/A $1,000 M/M/A 695 1,695
Amount Due From Defendant $ 7,544
Total Due Plaintiff $248,210
Defendant Shall Take and Have
Office Concepts, Inc. $130,000 Simple I.R.A. ASAF Janus 4,266 LFL. SARSEP 102,057 Roth I.R.A. (A) 0 Putnam M/M/A Roth I.R.A. 2,663 Putnam Global Ground C Life Insurance Policy F.V. $600,000 — Farmington Savings Bank 317 1998 Acura 14,000 140 Shares — Simsbury Bank Trust Co. 2,450
CT Page 1966
Subtotal $255,753
Less award due Plaintiff — $ 7,544
Total Amount Due Plaintiff $246,209
6. Supplemental Orders Relating to the Distribution of the Marital Estate
A. Defendant is ordered to convey to plaintiff within
thirty days from date hereof all his right, title and interest in No. 40 Indian Hill Road, Farmington, Connecticut. Plaintiff in turn will hold defendant harmless with regard all mortgages, taxes and other encumbrances on said property.
B. Plaintiff is ordered to transfer to defendant within thirty days from date hereof all her interest in Office Concepts, Inc. Defendant will hold plaintiff harmless with regard to all debts and other obligations association with said company.
C. Defendant will pay said balancing sum of $5,544 to plaintiff within thirty days from date hereof. If not paid within that period of time, said sum shall thereafter bear interest at 8 percent per annum.
D. Each of the parties will execute all documents necessary to carry out the orders of this court.
7. Orders Concerning the Children of the Parties
As previously noted, the parties have two children — a son Mark who is eighteen and a senior in high school, and a daughter Elizabeth who is fourteen. The following orders are entered pertaining to said children:
A. Custody
The parties shall have joint legal custody of the two minor children with primary physical custody with the plaintiff. The defendant shall have reasonable rights of visitation including alternating holidays. More particularly, in the year 2002 defendant shall have Easter and Thanksgiving and plaintiff shall have Fourth of July and Christmas.
B. Support
The defendant is ordered to pay to plaintiff as child support the sum CT Page 1967 of $259 per week until such time as the older child graduates from high school. Thereafter the defendant shall pay as child support for the remaining minor chid the sum of $175 weekly.
C. Health Insurance
The defendant shall maintain health insurance for the benefit of the minor children. The parties shall share equally any unreimbursed health expenses incurred on behalf of the minor children. The provisions of Sec. 46b-84 (e) C.G.S. are applicable.
D. Tax Exemptions
Until such time as the elder child is no longer a minor the parties shall share the two, tax exemptions. Thereafter the parties shall alternate taking the remaining exemption with defendant taking it in the even numbered years and plaintiff in the odd numbered years.
8. Orders Concerning the Plaintiff
A. Alimony
Having considered all the evidence as it relates to Sec. 46b-82 C.G.S. including but not limited to the length of the marriage, twenty years, the comparative incomes of the parties, and the awards which the court has previously made pursuant to Sec. 46b-81 C.G.S., it is ordered that defendant pay to plaintiff as alimony the sum of $130 per week. Said order is modifiable only as to amount but shall sooner terminate upon the remarriage of the plaintiff, the death of either party or plaintiff's cohabitation within the meaning and intent of Sec. 46b-86 (b) C.G.S.
B. Life Insurance
While plaintiff's proposed orders have made no reference to this issue, this court nevertheless orders that defendant continue to maintain his present life insurance policy with a face value of $300,000 and with plaintiff as irrevocable beneficiary during such time as defendant shall be required to pay alimony to the plaintiff. Said amount may from time to time be reduced when the total financial obligation of the defendant herein shall be less than $300,000.
C. Trusts for the Children
All trusts established by the parties for their children shall remain in their present form. CT Page 1968
D. Liabilities
Each of the parties shall be solely liable for all debts listed on his or her financial affidavits, and shall hold the other party harmless in that regard.
E. Personal Property
Each party shall retain those items of personal property presently in his or her possession. This court shall retain jurisdiction if the parties are unable to resolve any problems on this issue.
F. Counsel Fees
Because of the previous orders issued by the court, no award of counsel fees is made to either party.
G. Exchange of Federal Income Tax Returns
During such time as defendant shall be required to pay alimony to the plaintiff, the parties shall annually, commencing April 15, 2002, exchange federal income tax returns.
H. Effective Date of Orders
All orders, particularly those concerning alimony and child support, become effective as of the date of this memorandum.
BY THE COURT
John D. Brennan Judge Trial Referee