STATE OF CONNECTICUT *v.* ANTHONY F. DIBELLA ET AL.

KING, C. J., ALCORN, HOUSE, LOISELLE and DANNEHY, Js.

Argued November 6—decided December 30, 1968

*Wallace R. Burke,* with whom, on the brief, were *William J. Shea, Jr.,* and *Robert J. Kelleher,* for the appellant (defendant DiBella).

*Morton C. Hansen, Jr.,* with whom, on the brief, were *Joseph J. Fauliso* and *Morton N. Katz,* for the appellant (defendant Amaio).

*Arnold Markle,* special state's attorney, for the appellee (state).

ALCORN, J. The defendants Anthony F. DiBella and Alfred J. Amaio were informed against, along with three other persons who are not involved in this appeal, on the charge of conspiracy. General Statutes § 54-197. They were convicted after a jury trial and have appealed from the judgment rendered on the verdict. The defendant Amaio advanced eighteen, and the defendant DiBella advanced twenty-two, assignments of error. We treat as abandoned the many claims of error which are not briefed. *State* v. *Miller,* 154 Conn. 622, 624, 228 A.2d 136. Among the assignments of error which are pursued in the briefs, four are asserted by both defendants. In addition to these four, the defendant Amaio alleges five additional claims of error in which the defendant DiBella does not join, and the

defendant DiBella states two claims in which the defendant Amaio does not join. The resulting eleven assignments of error thus variously presented form the issues on this appeal.

Both DiBella and Amaio, hereinafter sometimes called the defendants, were arrested in February, 1964, pursuant to a warrant isued by a judge of the Superior Court, under the then-established procedure, without facts supported by oath or affirmation from which the judge could make an independent determination of probable cause. Each defendant claims, therefore, that his arrest was a violation of the fourth and fourteenth amendments to the constitution of the United States as laid down in *State* v. *Licari,* 153 Conn. 127, 133, 214 A.2d 900. This claim was not made by either defendant in the trial court and is raised for the first time by the assignments of error on this appeal. Essentially, the same claim was before us recently in the case of *Reed* v. *Reincke,* 155 Conn. 591, 236 A.2d 909. The present case was fully tried, and the verdict was rendered on March 11, 1965. The *Licari* case was decided eight months later, on November 9, 1965, and involved a claim of an illegal arrest which was asserted prior to trial. The defendants claim that their convictions now must fall because the arrest warrants by which they were brought before the court were, if the *Licari* case is given retrospective effect, illegal. They would invoke the rule of *O'Connor* v. *Ohio,* 385 U.S. 92, 87 S. Ct. 252, 17 L. Ed. 2d 189, and *State* v. *Vars,* 154 Conn. 255, 272, 224 A.2d 744, the effect of which was to relieve accused persons of the duty of raising an issue based upon a subsequent change in a rule of law which they could not, at the time, reasonably anticipate. Such, however, was not the situation confronting the defendants in the present

case. The claim now made could, and should, have been seasonably asserted by the defendants. As we pointed out in *State* v. *Orsini,* 155 Conn. 367, 378, 232 A.2d 907, the *Licari* case "amounted merely to a recognition and acceptance, and, indeed, an application . . . of settled law." It is clear that both defendants were represented by counsel and that both entered pleas to the merits on March 3, 1964, and again on November 17, 1964. As we pointed out in the *Reed* case, supra, 599, they thus submitted their persons to the jurisdiction of the court, and no way is suggested by which there was any prejudice or denial of due process of law. Consequently, under the principles we have had occasion to reiterate recently, the defendants' claim of reversible error because of the claimed defect in the arrest warrant is without merit. *Reed* v. *Reincke,* supra; *State* v. *Orsini,* supra; see also *D'Amico* v. *Reincke,* 155 Conn. 627, 629, 236 A.2d 914.

Amaio makes an additional attack on the legality of his arrest, namely, that the arresting officer did not bring him "forthwith" before the clerk of the court as required by § 54-43 of the General Statutes. The trial court has found that Amaio was arrested on February 20, 1964. When the arrest occurred during that day does not appear. The officer's return recites that the defendants were arrested at 2:50 p.m. on February 21, 1964, and Amaio asserts that he was presented in court on that date. No other facts bearing on this issue appear, and the claimed violation of the statute is without support in the record. See *State* v. *Darwin,* 155 Conn. 124, 135, 230 A.2d 573, rev'd on other grounds, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630.

The original information, in substance, charged the defendants and the other named persons with

conspiring to bribe police officers and to pervert and obstruct justice so that illegal gambling and liquor establishments could operate in certain areas, and it alleged ten overt acts in furtherance of that conspiracy. Both Amaio and DiBella moved to quash and dismiss the information on the ground that the acts alleged did not constitute the offense charged but, instead, alleged a bribery which could not be converted into the charge of conspiracy. The court concluded that, while "ordinarily a motion to quash is directed to the information itself and not to the overt acts alleged, the futility of proceeding further on the present state of the pleadings should not be overlooked", and it granted the motion to quash. Thereupon, the state's attorney filed what was styled an amended information alleging that within the same dates and at the same places the same persons, including the defendants, conspired "to offer money to police officers concerned in the administration of justice with intent to illegally influence the behavior of said police officers in their offices" so that illegal gambling and liquor establishments might be permitted to operate in certain counties, and then the information alleged ten overt acts in furtherance of that conspiracy. DiBella, but not Amaio, moved to dismiss the amended information and to declare it void, and the court denied the motion. DiBella assigns error in the denial of his motion on the ground that the dismissal of the original information rendered it null and void and that, consequently, it could not be amended. Other grounds were alleged in the motion, but the ground just recited is the only one on which error is assigned. Quite aside from the fact that the memorandum of the court in quashing the original information clearly indicates that the court was con-

cerned with the allegation of overt acts rather than any deficiency in the information as a whole, it is apparent that, since the so-called amended information was complete in itself and entirely superseded the original information, it actually was, and more accurately should have been termed, a substituted information. See *Wesley* v. *DeFonce Contracting Corporation,* 153 Conn. 400, 404, 216 A.2d 811; *Lancaster* v. *Bank of New York,* 147 Conn. 566, 576, 164 A.2d 392. The so-called amended information was not only complete in itself but was not attacked by the motion on the ground that it did not sufficiently charge the crime of conspiracy. The court properly treated it as a new information which superseded its predecessor. See *State* v. *Martin,* 2 Ariz. App. 510, 514, 410 P.2d 132. The propriety, before trial, of permitting the filing of a new information after an earlier one has been quashed is generally recognized. 21 Am. Jur. 2d 234, Criminal Law, § 172; 22 C.J.S. 660, Criminal Law, § 252. Following its filing, both defendants were again presented and pleaded not guilty to the offense charged in it and elected trial by a jury of twelve. The claim now made by DiBella that the court erred in denying his motion to dismiss is without merit.

Both defendants, however, now assign as error the sufficiency of what is called the amended information. Amaio launched an earlier attack by a demurrer which was overruled by the court. Although there were several grounds of demurrer, Amaio assigns error in the court's ruling only on the ground that the amended information does not allege the commission of a crime because there is no allegation which would characterize the police officers as "being concerned in the administration of justice." He likewise attacks the verdict on the

same basic premise, namely, because there was no evidence to establish that the police officers involved were "concerned in the administration of justice." DiBella bases an attack on the verdict on the same contention. The lack of merit in any error thus assigned clearly appears in the brief of each defendant wherein it is argued that, in order to convict, the state was required to prove, beyond a reasonable doubt, all of the elements of the crime of bribery as defined in § 53-147 of the General Statutes. The arguments stray from the issue involved by failing to recognize that the prosecution in this case was for the crime of conspiracy under General Statutes § 54-197 and not for the crime of bribery under § 53-147.

The crime of conspiracy, at common law, is the unlawful combination and not the accomplishment of an objective or objectives whether lawful or unlawful. *State* v. *Hayes,* 127 Conn. 543, 588, 18 A.2d 895; *Fimara* v. *Garner,* 86 Conn. 434, 437, 85 A. 670; *State* v. *Thompson,* 69 Conn. 720, 725, 38 A. 868; *State* v. *Setter,* 57 Conn. 461, 469, 18 A. 782. The commission of the crime involves an unlawful act or object but not necessarily a criminal act or object. *State* v. *Hayes,* supra; *State* v. *Parker,* 114 Conn. 354, 361, 158 A. 797. "An unlawful act may not prove injurious to an individual or to a community when attempted by an individual, and may be readily prevented; the same act attempted by two or more in concert may become dangerous to the public peace and to the security of persons and property, and harmful to public morals, by the very weight and power of numbers. . . . These characteristics of the crime indicate that the law regards it as a serious crime of far-reaching criminality." *Fimara* v. *Garner,* supra.

In 1939, the common-law crime, as defined by this court, was embodied in § 1447e of the 1939 Cumulative Supplement to the General Statutes. *State* v. *McLaughlin*, 132 Conn. 325, 328, 44 A.2d 116. Subsequently, in 1955, the statute was amended by Public Act No. 515 to its present form. Cum. Sup. 1955, § 3352d. The amendment was the result of three bills which had been introduced in the 1955 session of the General Assembly.[1] The two Senate bills were reported unfavorably by the Committee on Judiciary and were rejected. The House bill, as introduced, would have deleted from the statute as it had existed since 1939 the common-law definition of conspiracy and would have confined the definition of the crime to a conspiracy to commit either a felony or a misdemeanor with varying penalties provided for the two classes of crimes. The General Assembly did not adopt the House bill as introduced but enacted, instead, § 3352d of the 1955 Cumulative Supplement, which now appears as General Statutes § 54-197. The legislative intent clearly apparent from this action is that the common-law crime of conspiracy is retained in the statute but, when the object of the conspiracy is shown to be not only unlawful but criminal, then, if that crime is a misdemeanor, the penalty to be imposed must be that provided by statute for the particular misdemeanor.

The information upon which the defendants were tried and convicted alleged, in substance, that they conspired, with others, to offer money to police officers with the intention of illegally influencing the behavior of the latter so that illegal gambling and

[1] House Bill 2059, "An Act concerning the Penalty for Conspiracy"
Senate Bill 220, "An Act concerning Conspiracy"
Senate Bill 612, "An Act concerning Conspiracy"

liquor establishments might be permitted to operate. The conspiracy alleged was undeniably illegal, dishonest and contrary to public policy. *Smith* v. *David B. Crockett Co.*, 85 Conn. 282, 286, 82 A. 569. A person is guilty of a conspiracy if he "combines, confederates or agrees with another or others to accomplish any unlawful object by lawful means, or any lawful object by unlawful means, or any unlawful object by unlawful means" and does any act in furtherance of such a conspiracy. General Statutes § 54-197. There can be no doubt that the information alleged a conspiracy within the terms of that statute, and it is quite immaterial whether the police officers involved were persons "concerned in the administration of justice" as those words are used in § 53-147, the bribery statute.

Both defendants claim that the court erred in denying their respective motions for a bill of particulars. Amaio asserts only that he sought more information in order to enable him to prepare his defense without stating any reason why he was unable properly to prepare his defense beyond an inconvenient excess of effort. DiBella, in substance, makes the same assertion. It lay in the court's discretion to grant the motion if it determined that the information charged an offense without sufficiently informing each accused of its particulars in order to enable him to prepare a defense. Practice Book § 495. The burden of showing that additional particulars were necessary to ensure a fair trial was on each defendant. *State* v. *Curtis,* 146 Conn. 365, 367, 151 A.2d 336. Neither defendant claims, on this issue, that the information did not adequately charge a violation of General Statutes § 54-197. We find nothing to indicate that the court abused its discretion in denying the motions.

It is unnecessary to recite, in detail, the large volume of evidence which was offered before the jury concerning the conspiracy which was alleged. In summary, there was evidence from which the jury could find that DiBella had had extended discussions with Pasquale Guglielmo, a barber in West Hartford, over the fact that DiBella wanted to "get some action going in this town", meaning West Hartford. The action concerned "booking horses." As a result of these conversations, Guglielmo, on September 17, 1963, approached Francis Reynolds, a detective in the West Hartford police department, and informed Reynolds that he could make $10,000 or $12,000 by reporting the imminence of a gambling raid by state or local police. To assure Reynolds of the safety of the operation, Guglielmo used Amaio's name and told Reynolds that gambling operations had been "in the making" for the past year and that the operation was going to be well organized. Reynolds immediately reported this conversation to his superiors. After consultation with the chief of police and the assistant chief of police, Reynolds was instructed as to how to proceed. His activity in all subsequent events was pursuant to instructions and with the full knowledge of his superior officers. After the conference with his superiors, Reynolds assured Guglielmo that he would cooperate, whereupon Guglielmo arranged a meeting between Reynolds and DiBella, who was described by Guglielmo as the "contact man." Reynolds first met DiBella at a restaurant, on November 7, 1963, under the surveillance of Reynolds' superiors. At that meeting, DiBella told Reynolds of various gambling operations already functioning in various towns; that he had been told that West Hartford was an ideal place to operate; that he was

waiting for good "writers", meaning those who take bets on horses over the telephone; and that he wanted guaranteed protection for four hours a day. From the date of this meeting until the defendants' arrest in February, 1964, a series of meetings arranged by DiBella took place in West Hartford, New Britain, Avon, Wallingford and New Haven. On occasion Reynolds wore a recording device, and the recorded conversation was transcribed. Various persons, including the defendant Amaio, were present at various meetings. Discussions involved aspects of the gambling operation, the enlistment of the cooperation of a New Haven police officer, and the amounts of money to be paid to him and to Reynolds. The aid of Stephen P. Ahern, a sergeant in charge of the special services division of the New Haven police department which is concerned with gambling, narcotics, vice and prostitution was enlisted after he had been briefed by the state's attorney's office. Ahern's connection was sought because of operations which were already functioning in New Haven and dice games which were to start in New Haven on February 13, 1964. DiBella, at one meeting, stated that he and Amaio were also considering an illegal package store operation, which should net them $30,000 to $40,000 a year, whereupon he telephoned to Amaio, who came to the meeting and met Reynolds and Ahern. DiBella had previously told Reynolds that Amaio "is ready to go and he's really hot about the thing." There were several meetings at which the amounts to be paid Ahern and Reynolds, as well as the terms of payment, were discussed. On February 12, 1964, Reynolds' superior officers watched while DiBella met Reynolds, by prearrangement, in West Hartford and delivered a brown paper bag to Reynolds which

DiBella said contained $1200. Reynolds then left, after which DiBella departed in a car driven by Amaio, which had been parked nearby. Reynolds' superiors went at once to Reynolds' home, where they counted the money, which in fact amounted to $1200. On the next day, Reynolds and Ahern met DiBella in Wallingford. Reynolds drove DiBella to the meeting, and, on the way, DiBella gave Reynolds "the rest of the money." At the meeting, Reynolds, with this sum, gave $400 to Ahern as Ahern's share and retained $400 for his own share. Reynolds turned his $400 over to the West Hartford chief of police, and Ahern turned his $400 over to the state's attorney's office. The arrest of the defendants followed about a week later.

The finding of the trial court, as corrected, is that both Amaio and DiBella moved for the sequestration of the witnesses Reynolds, Ahern and Guglielmo. The court denied the motion, and both defendants assign error in this action of the court. Since the trial of this case antedated No. 498 of the 1967 Public Acts (General Statutes [Rev. to 1968] § 54-85a), that statute is inapplicable, and the correctness of the ruling is to be determined under the principles of the common law. The sequestration of witnesses is not, at common law, demandable of right but rests in the sound discretion of the court, and the considerations basic to the exercise of that discretion are detailed in *State* v. *Pikul,* 150 Conn. 195, 199–201, 187 A.2d 442. The defendants argue that the denial of the motion was an abuse of the court's discretion because Guglielmo, having become a state's witness and desiring clemency, and Reynolds and Ahern, having conducted practically the entire investigation and desiring a successful result, were likely to shape their testimony to accord with

one another. No reason appears to justify a presumption that the testimony of the officers would be untrustworthy. *Bush* v. *United States*, 375 F.2d 602, 604 (D.C. Cir.). There was obviously little which Guglielmo could corroborate concerning the activity of the officers, and no harmful error is shown to have arisen from any actual corroboration. We find no abuse of discretion by the trial court in its denial of the motion.

Amaio assigns error in the portion of the court's charge in which the jury were told, in substance, that DiBella could not be found guilty of conspiracy if they concluded that, as he claimed, he had paid money to the officers in order to satisfy a "moral obligation" to Paul Licari and to assist Licari in his difficulties with a liquor permit. DiBella had admitted paying money to Reynolds but had claimed that it was paid in order to help Licari. Amaio now claims that a similar charge should have been given as to himself. The claim is without merit. Not only was no request to charge made and no exception taken to the charge as given; Practice Book § 249; but such a charge would have been inconsistent with Amaio's claims of proof that Amaio had nothing to do with any payment.

Amaio also assigns error in portions of the court's charge concerning the failure of an accused person to testify. Amaio did not testify, the court charged as he requested concerning this circumstance, and Amaio expressly concedes that there was no error in the charge. The court, however, also charged as requested by Licari, who also did not testify. The charge requested by Licari violated the rule laid down in *Griffin* v. *California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106. *State* v. *Wilkas*, 154 Conn. 407, 409, 225 A.2d 821. The complaint now made by

Amaio is that the erroneous charge requested by
Licari would taint the jury's consideration of
Amaio's position in the case. The record discloses,
however, that the court clearly emphasized to the
jury that the portion of the charge relating to
Licari's failure to testify was requested by Licari
and was to be applied to him. Since, in addition,
Amaio not only took no exception to that portion
of the charge but also concedes that the jury were
correctly charged as to his own failure to testify,
we find no harmful error. See *Chapman* v. *Califor-
nia,* 386 U.S. 18, 21, 87 S. Ct. 824, 17 L. Ed. 2d 705.

Amaio also assigns error in the court's denial
of his motions for a directed verdict and to set aside
the verdict on the ground that the evidence was
insufficient to support his conviction of the crime
charged. It sufficiently appears from the recital
of facts above that the claim is without merit. *State*
v. *Hayes,* 127 Conn. 543, 554–56, 564, 18 A.2d 895.

The state produced, as a rebuttal witness, a police
officer who testified that he saw Amaio and DiBella
together in an automobile at 2:45 a.m. on a morning
during the trial. Amaio's counsel stated to the court
that, in view of that testimony, he wished "just a
moment to see what I will do insofar as my own
rebuttal is concerned." The court ruled that the
state had the right to close and that the case should
not be opened for any new evidence. Amaio now
assigns this ruling as an erroneous refusal of an
offer of testimony. The claim is without merit. The
motion, if it can be called such, was for a continu-
ance, the granting of which lay in the court's discre-
tion. *State* v. *Wojculewicz,* 143 Conn. 118, 123, 119
A.2d 913. The claim is that the court's action left
the defendants "with an uncontradicted statement
which seriously affected their credibility." Amaio

did not testify, and the only credibility to be affected was that of DiBella, who had testified that he did not see Amaio that morning. Consequently, Amaio's credibility was not concerned, and there was, in fact, no offer of testimony as now claimed.

Amaio's final assignment of error is confused. It purports to attack, as hearsay, the admission into evidence of a conversation between Reynolds and DiBella during one of their many meetings. No reference whatever is made to Amaio in the statement. In objecting to what DiBella had said to Reynolds as hearsay, Amaio's counsel added: "Unless at some subsequent point it is established that he [Amaio] is part of a conspiracy, I think your Honor should then rule." The court overruled the objection, saying that, if, at the proper time, there was evidence from which the jury could conclude that Amaio was part of the conspiracy, the statement could be considered by the jury in the case against him, otherwise they would be told to disregard it. No objection by counsel to this procedure was offered. Nothing further concerning it appears, and we find no harmful error in the ruling.

DiBella claims that, if he did commit the crime alleged, he did so because of entrapment, and he assigns error in the court's charge on that subject. We are not required to consider the assignment because the record discloses neither a request to charge on entrapment nor an exception to the charge as given. Practice Book § 249.

There is no error.

In this opinion the other judges concurred.