STATE OF CONNECTICUT *v.* JOHN SUMNER

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, JS.

Argued March 15—decision released June 26, 1979

*Joseph Shortall,* chief public defender, with whom, on the brief, was *James D. Cosgrove,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Austin J. McGuigan,* chief state's attorney, and *Richard Schatz,* assistant state's attorney, for the appellee (state).

LONGO, J. In a two-count information, the defendant was charged with committing the crimes of larceny in the first degree in violation of § 53a-122 (a) (2) of the General Statutes, and conspiracy to commit larceny in the first degree in violation of §§ 53a-48 and 53a-122 (a) (2) of the General Statutes. On a trial to a jury he was convicted of both offenses. The defendant has appealed from the judgment rendered, and has briefed the following claims of error: (1) that the provisions of General Statutes § 53a-122 (a) (2) do not set forth a specific crime, and that the defendant could, thus, not be convicted for a violation of that section; (2) that the court erred in charging the jury on the crimes of larceny and conspiracy to commit larceny; and (3) that the state did not prove the guilt of the defendant as charged in the information.

From a review of the evidence the jury could have reasonably found the following facts: In June, 1975, Dereck R. Thomas, of Bangor, Maine, heard from a former acquaintance, James Dewitt, of Hart-

ford, that Thomas could make a profitable purchase of plywood in Connecticut. Thomas obtained a certified check for $3500, and went to Meriden accompanied by a friend, James Smith. The next morning Dewitt did not materialize, but the defendant Sumner arrived in Meriden and told Thomas that he could not complete the original deal for the purchase of plywood, and that the plywood would have to be purchased at another building outlet, Wicke's Lumber in Southington. The defendant then dialed a number, and handed the phone to Thomas who heard a man state: "Wicke's Lumber, manager speaking." The defendant then directed Thomas to several banks where he thought Thomas might cash his check. Later that day, the defendant told Thomas that Wicke's was closed, and drove Thomas and his companion to a motel. The next morning, the defendant picked Thomas up, drove him to his truck, told Thomas to go to Wicke's and that the manager of Wicke's would meet Thomas there, and that the manager would be wearing "a green suit."

When Thomas arrived at Wicke's, a man dressed in a green suit came out of the front of the store. Thomas gave the man $2650 and, at the "manager's" suggestion, proceeded in his truck to pick up the plywood. At this point, however, Thomas stopped and departed from his truck in order to obtain a receipt for the $2650. The man in green had disappeared, and Thomas did not obtain any plywood or the return of his money. From these facts, it is apparent, as the jury evidently found, that Thomas was the obvious victim of a well executed "flimflam" or "ripoff" operation.

Later that day, Thomas and his friend, Smith, both identified a police photograph of Sumner.

Thomas returned to Connecticut three or four months later to testify against Sumner at a court hearing. He met the defendant in the hallway of the courthouse where the defendant offered Thomas $1000 if he would drop the case. Thomas first accepted the offer, but when the defendant said he needed time to make payment, Thomas refused.

On the basis of these facts, the jury returned a verdict and judgment was imposed convicting the defendant of first degree larceny and first degree conspiracy to commit larceny.

We first consider the defendant's claim relating to the nonspecificity of the information lodged against him. The defendant, arguing that § 53a-122 (a) (2) does not define a distinct criminal offense, asserts that the state's allegation of a violation of this section did not sufficiently inform him of the specific charges against him. More specifically, the defendant claims that the failure of the information to charge a violation of § 53a-119, which enumerates various statutory larceny offenses, rendered the information, and the defendant's convictions, fatally defective. We cannot agree.

We cannot overlook the defendant's claim that an accused in a criminal proceeding has the right to be informed of the nature and cause of the accusation against him, and that the offense should be described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial; these principles of constitutional law are inveterate and sacrosanct. U.S. Const., amend. VI; Conn. Const., art. I, § 8; 2 Wharton, Criminal Procedure

(12th Ed.) § 258. Under our practice at the time of the defendant's trial in May, 1976, however, it was sufficient for the state to set out in the information the statutory name of the crime with which the defendant was charged, and to leave to the defendant the burden of requesting a bill of particulars more precisely defining the manner in which the defendant committed the offense. Practice Book, 1963, §§ 495, 498; *State* v. *Troynack,* 174 Conn. 89, 96–97, 384 A.2d 326 (1977); *State* v. *Ruiz,* 171 Conn. 264, 270, 368 A.2d 222 (1976); *State* v. *Brown,* 163 Conn. 52, 61, 301 A.2d 547 (1972); *State* v. *Davis,* 141 Conn. 319, 106 A.2d 159 (1954). The information in this case charged that the defendant "did steal" property of a value in excess of $2000, and the defendant requested no bill of particulars to obtain with more specificity an understanding of the nature of the information's allegations. Our review of the transcript, moreover, discloses that the defendant never complained to the trial court that he was unable to prepare a defense due to a lack of specificity in the information, or that he was unable to defend vigorously against the state's case, which centered upon the defendant's obtaining of money by means of a false promise. General Statutes § 53a-119 (3).

While better practice may counsel that the state include a specific reference to the larceny offense charged as enumerated in § 53a-119, in the context of this case the state will not be penalized for a claimed uncertainty in the information. *State* v. *Mola,* 128 Conn. 407, 410, 23 A.2d 126 (1941); see *State* v. *Coleman,* 167 Conn. 260, 274, 355 A.2d 11 (1974) (*Bogdanski, J.,* concurring). It is inconceivable to us how the defendant could possibly have been misled as to the offense with which he was

charged. The transcript manifestly reveals that Sumner's defense was not hampered by the information lodged against him; to hold otherwise would amount to trial by ambuscade. See *State* v. *DiBella,* 157 Conn. 330, 339, 254 A.2d 477 (1968); *State* v. *Parker,* 114 Conn. 354, 366, 158 A. 797 (1932). The defendant can gain nothing from his present claim without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. *State* v. *Rafanello,* 151 Conn. 453, 457, 199 A.2d 13 (1964); *State* v. *Mola,* supra, 410; 5 Wharton, Criminal Law and Procedure § 2056. As the state's pleadings here informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty. *Russell* v. *United States,* 369 U.S. 749, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962); *United States* v. *Debrow,* 346 U.S. 374, 74 S. Ct. 113, 98 L. Ed. 92 (1953); *State* v. *Coleman,* supra, 275 (*Bogdanski, J.,* concurring); *State* v. *Beaulieu,* 164 Conn. 620, 625, 325 A.2d 263 (1973); see *State* v. *Ramos,* 176 Conn. 275, 277–78, 407 A.2d 952 (1978); *State* v. *Costello,* 62 Conn. 128, 130, 25 A. 477 (1892); cf. Wright, Federal Practice and Procedure § 125. There was no infirmity in the information.

The defendant next claims that the court erred in charging the jury on the crimes of larceny and conspiracy to commit larceny. The defendant contends that the court should not have instructed the jury in accordance with the definition of larceny

by false promise, as provided in General Statutes § 53a-119 (3),[1] because the state's information, to which we have previously adverted, charged only a violation of § 53a-122 (a) (2), which does not contain an elemental definition of larceny, but merely provides: "A person is guilty of larceny in the first degree when: . . . the value of the property or service exceeds two thousand dollars." The information contained the somewhat conclusory language that the defendant "did steal" the property of another. Defense counsel's exception at trial, moreover, indicated that he challenged the court's combination of a charge on the substantive larceny offense with a charge upon the conspiracy to commit larceny offense. We take the defendant's claim to be that the court should have restricted its charge to a mention of § 53a-122 (a) (2), because that was the only statute mentioned in the information, and because there was no evidence that the defendant made any false promise. The defendant's present argument appears to spring from a misconception of the duty of the court to charge on the elements of the offense in light of adduced evidence; we reject that argument.

---

[1] "[General Statutes] Sec. 53a-119. LARCENY DEFINED. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to: . . . (3) Obtaining property by false promise. A person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or does not believe that the third person intends to engage in such conduct. In any prosecution for larceny based upon a false promise, the defendant's intention or belief that the promise would not be performed may not be established by or inferred from the fact alone that such promise was not performed. . . ."

We note at the outset that the defendant made no specific exception to the court's reference to the statutory definition of larceny by false promise, and did not claim, in the trial court, that the court was restricted in its charge to a reference to § 53a-122 (a) (2). In such circumstances, we are not required to address the claim for the first time on appeal. *State* v. *Evans,* 165 Conn. 61, 69–71, 327 A.2d 576 (1973). Nonetheless, § 53a-119 is explanatory of the manner in which the crime of larceny may be committed, and subsection (3) of the statute appeared to be the form of larceny most appropriately suggested by the evidence: the obtaining of money by false promise. As noted above, the information alleged that the defendant "did steal" the property of another. The court was required to instruct the jury as to the essential elements of the crime and the criminal intent necessary to commit the offenses charged. In such circumstances, reference to § 53a-119 (3) was not erroneous, as the evidence adduced at trial clearly indicated that the manner in which the defendant "did steal" the property of another, as charged in the information, was by means of a false promise. The test of a charge is whether it is correct in law, adapted to the issues and sufficient for the guidance of the jury. *Berniere* v. *Kripps,* 157 Conn. 356, 358, 254 A.2d 496 (1969); *State* v. *Bell,* 153 Conn. 540, 219 A.2d 218 (1966); Maltbie, Conn. App. Proc. § 76. The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established. *Vita* v. *McLaughlin,* 158 Conn. 75, 77, 225 A.2d 848 (1969); *Worden* v. *Francis,* 153 Conn. 578, 579, 219 A.2d 442 (1966). The charge must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the

application of those principles to the facts claimed to have been proven. *State* v. *Cari,* 163 Conn. 174, 182, 303 A.2d 7 (1972); *Crane* v. *Hartford-Connecticut Trust Co.,* 111 Conn. 313, 315, 149 A. 782 (1930). While the degree to which reference to the evidence may be called for lies largely in the discretion of the court; *State* v. *Cari,* supra; the court was nevertheless required to charge the jury on the applicable larceny offense, General Statutes § 53a-119 (3), and an allusion to that statute was required to furnish a practical guide to the jury as to how the stated law was to be applied to the evidence before them. See *Vita* v. *McLaughlin,* supra, 77; *Worden* v. *Francis,* supra, 580; see also *Gosselin* v. *Perry,* 166 Conn. 152, 348 A.2d 623 (1974); *Corrievau* v. *Associated Realty Corporation,* 122 Conn. 253, 256, 188 A. 436 (1936). There was, thus, no error in the charge insofar as it contained a reference to larceny by false promise.

The defendant's final claim is framed variously as an attack on the sufficiency of the evidence, the court's charge and the court's failure to charge on accessorial liability under § 53a-8 of the General Statutes. We immediately dismiss the defendant's claim relating to § 53a-8. Not only did the evidence before the trial court suggest appreciably more than the mere accessorial liability of the defendant, but the defendant has not printed in his brief any request to charge under this statute, a requirement for our review of his present claim. Practice Book, 1978, § 3054 (c) (1). The defendant, moreover, took no exception to the failure of the court to charge on the accessory statute, and has pointed to no exceptional circumstance warranting our departure from the general rule that issues raised for the first time on appeal are not afforded review. Practice Book,

1978, § 3063; *State* v. *Rado,* 172 Conn. 74, 81, 372 A.2d 159 (1976); *State* v. *Hawkins,* 162 Conn. 514, 517, 294 A.2d 584, cert. denied, 409 U.S. 984, 93 S. Ct. 332, 34 L. Ed. 2d 249 (1972).

The defendant's basic claim thus appears to be evidentiary: that the court erred in refusing to grant his motion to set aside the verdict on the basis of the insufficiency of the evidence. When a jury verdict is challenged on the ground that the evidence is insufficient, the issue is whether the jury could reasonably have concluded, upon the facts established and the reasonable inferences to be drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978); *State* v. *Jones,* 173 Conn. 91, 94, 376 A.2d 1077 (1977). The court, in ruling on such a motion, must give the evidence a construction most favorable to sustaining the jury's verdict. *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977); *State* v. *Panella,* 168 Conn. 532, 534, 362 A.2d 953 (1975). The determination important to this issue is whether the jury could have believed that the defendant made a promise, express or implied, that he or a third person would engage in particular conduct, when he knew that the third party, here the unidentified "man in the green suit," did not intend to engage in such conduct. General Statutes § 53a-119 (3). From the evidence presented and the reasonable inferences derived therefrom, the jury could reasonably have concluded that Thomas was the victim of a well planned and successfully executed conspiracy between the defendant and the green-suited man by which he was "fleeced" of $2650; that the defendant participated in "setting up" the

prospective victim with the unknown man in the green suit, and that the modus operandi had all the earmarks of a typical "flimflam" operation. The jury were, of course, free to infer the defendant's criminal intent, an essential element of the crime, from the circumstances, and more particularly, from the conduct of the defendant in inducing the unwitting victim to part with his money in the expectation of obtaining the plywood. *State* v. *Coleman,* 167 Conn. 260, 263–64, 355 A.2d 11 (1974); *State* v. *Farrah,* 161 Conn. 43, 49–50, 282 A.2d 879 (1971); *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447 (1969); *State* v. *Fredericks,* 149 Conn. 121, 124, 176 A.2d 581 (1961). The verdict of guilty on both counts indicates the acceptance by the jury of the facts that a conspiracy existed in which the defendant actively participated and that, as the result of his conduct and the conduct of another or others, the offense of larceny as defined by the statutes was committed by the defendant. We conclude that the court did not err in denying the defendant's motion to set aside the jury verdict.

There is no error.

In this opinion the other judges concurred.