STATE OF CONNECTICUT *v.* MARK VINCENT
(10572)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued May 10—decision released August 7, 1984

*T. Stevens Bliss,* for the appellant (defendant).

*Carl J. Schuman,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Brian E. Cotter,* assistant state's attorney, for the appellee (state).

SHEA, J. After a trial to the court, the defendant was found guilty of burglary in the third degree and larceny in the fourth degree in violation of General Statutes §§ 53a-103[1] and 53a-125,[2] respectively. On appeal, he raises three issues, claiming that the trial court erred in (1) denying his motion to dismiss for lack of jurisdiction, (2) denying his supplemental motion in arrest of judgment for failure of the information to charge an offense, and (3) denying his motion for acquittal based on the insufficiency of the evidence. In addition, the state has noted an error in the sentence on the larceny conviction. We find no error as to the defendant's claims, but remand for resentencing on the larceny conviction in accordance with General Statutes § 53a-36 (3).

The trial court could reasonably have found the following facts: On July 11, 1980, Josephine Vorisek left her house on route 25 in Newtown, at approximately 8:30 a.m. Approximately twenty-five minutes later, the defendant and a passenger were observed by a Brookfield police officer as they traveled north on route 25 in Newtown in a red-orange Corvette. The officer was in the area on other business. The Corvette made a U-turn at the intersection of route 25 and Currituck Road approximately one-half mile north of the Vorisek house

---

[1] "[General Statutes] Sec. 53a-103. BURGLARY IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein.

"(b) Burglary in the third degree is a class D felony."

[2] At the time of the offense, the applicable larceny statute was as follows: "[General Statutes] Sec. 53a-125. LARCENY IN THE FOURTH DEGREE: CLASS C MISDEMEANOR. (a) A person is guilty of larceny in the fourth degree when the value of the property or services is fifty dollars or less.

"(b) Larceny in the fourth degree is a class C misdemeanor."

General Statutes § 53a-119 provided in part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

and proceeded south on route 25. When the car approached the house, it pulled into the adjacent driveway. The passenger emerged from the car, knocked on the front door, then walked around to the rear of the house. The defendant, now alone, drove the car north on route 25, made a second U-turn at the intersection of route 25 and Currituck Road, and proceeded back toward the Vorisek property. The defendant picked up the passenger and, after a circuitous drive across the Brookfield town line, parked the Corvette in a clearing in Newtown about one-half mile from the Vorisek house at approximately 9:15 a.m. Both the defendant and the passenger left the automobile.

A few minutes later several Newtown and Brookfield officers inspected the Vorisek property. They discovered an open window which had been broken in the rear of the house, but nothing else noticeably out of place in or outside the house.

Three plainclothes Brookfield officers agreed to watch the Corvette while the Newtown officers withdrew their identifiable police cars from sight and began to search the woods to the rear of the Vorisek property. At approximately 9:55 a.m., the defendant emerged from the wooded, swampy area surrounding the Vorisek home and returned to the clearing where the Corvette was parked. The defendant's jeans were wet, and his body was scratched. The Brookfield officers approached the defendant, informed him that he was a burglary suspect, and detained him for approximately five minutes until the Newtown police arrived and formally placed him under arrest.

After she was notified of this incident by the police, Josephine Vorisek returned to her home at approximately 2 p.m. Although all the windows of her house had been intact and locked when she left that morning, Josephine Vorisek found that one of them was now

broken and was open. In addition, directly under the broken window, one-half of a bulkhead door which had been open was now closed, providing a platform upon which one could step to reach the window. Inside, Josephine Vorisek found that a jade ring which she kept in a box in a bedroom bureau was missing. She had last seen the ring two or three days before. Neither the ring nor the defendant's passenger was found.

## I

The defendant claims error with regard to the court's denial of his motion to dismiss. The defendant presses two prongs of this motion, claiming that the court lacked in personam jurisdiction over the defendant (1) because the defendant was improperly arrested by Brookfield officers outside their jurisdiction, and (2) because there was no probable cause to arrest the defendant at the time of his arrest. Practice Book §§ 808, 810, 811 and 815 control the disposition of this claim. Section 815 (4) provides that questions concerning the jurisdiction of the court over the defendant may be raised by a motion to dismiss prior to trial.[3] Section 808 declares that a pretrial motion is the exclusive means of raising such a defense if it is capable of determination prior to trial.[4] Under § 811, all pretrial motions must be made not later than ten days after entry of a plea, or "for good cause shown, at such later

---

[3] Practice Book § 815 provides in part: "The following, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the indictment or information . . . (4) Defenses or objections based on the absence of jurisdiction of the court over the defendant or the subject matter . . . ."

[4] Practice Book § 808 provides: "Any defense, objection or request capable of determination without a trial of the general issue may be raised only by a pretrial motion made in conformity with this chapter."

It is obvious that the trial court could have decided the jurisdictional matters raised in the motion to dismiss without reaching the question of whether the defendant committed the crimes in question. The fact that the court deferred a ruling until after the evidence at trial is not significant; Practice Book § 813 provides express authority for this course of conduct. Indeed,

time as the judicial authority may fix."[5] Finally, § 810[6] provides that failure to abide by these rules constitutes a waiver of defenses or objections required to be raised before trial, such as "the absence of jurisdiction of the court over the defendant" referred to in § 815 (4).

The defendant in this case entered a plea of not guilty to the burglary count on July 18, 1980. He then entered a plea of not guilty to both counts of the substituted information on September 13, 1980. It was not until the trial began, on November 6, 1980, over three and one-half months after initially submitting to the jurisdiction of the court and one and one-half months after the effective date of the plea, that the defendant filed his motion to dismiss. This court has consistently held that, unless a challenge to the jurisdiction of the trial court based on the invalidity of the arrest is raised by a timely motion, it is waived. *State* v. *Tropiano,* 158 Conn. 412, 429–31, 262 A.2d 147 (1969), cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970); *State* v. *DiBella,* 157 Conn. 330, 333–34, 254 A.2d 477 (1968); *Reed* v. *Reincke,* 155 Conn. 591, 598–601, 236

the court's decision to defer a ruling was induced by the defendant's representation that such was a proper course. In any event, the deferral does not change the nature of the motion.

[5] Practice Book § 811 provides: "Unless otherwise provided by these rules or statute, all pretrial motions or requests shall be made not later than ten days after the entry of a plea in the court where the case will be tried, or, for good cause shown, at such later time as the judicial authority may fix. However, defenses and objections alleging lack of jurisdiction over the offense charged or failure of the indictment or information to charge an offense may be raised by the defendant or noticed by the judicial authority at any time during the pendency of the proceedings."

[6] Practice Book § 810 provides: "Failure by a party, at or within the time provided by these rules, to raise defenses or objections or to make requests that must be made prior to trial shall constitute a waiver thereof, but a judicial authority, for good cause shown, may grant relief from such waiver, provided, however, that lack of jurisdiction over the offense charged or failure of the indictment or information to charge an offense may be raised by the defendant or noticed by the judicial authority at any time during the pendency of the proceedings."

A.2d 909 (1967); *State* v. *Orsini,* 155 Conn. 367, 378–79, 232 A.2d 907 (1967). Practice Book § 811 specifies the time within which the motion must be filed, and § 810 reiterates the effect of failing to do so.[7]

The defendant claims that the trial court considered his motion on the merits and that we should therefore assume that the court found good cause under the exception to the time requirements of § 811. To support this interpretation, the defendant notes that the trial court delayed a ruling on the motion to dismiss until after presentation of the evidence at trial. This course of conduct, expressly sanctioned by Practice Book § 813, was in fact followed at the defendant's suggestion since the motion was made on the first day of trial and the court had no time to give it independent consideration. After accepting the defendant's suggestion, the trial court subsequently denied the defendant's motion to dismiss without opinion. Commenting on this ruling, the court later stated that it had made no factual findings on the merits of the motion, implying that the court had not considered the merits in ruling on the motion. If further clarification of this ruling was necessary, the defendant could have properly preserved his claim of error by filing a motion for articulation with the trial court pursuant to Practice Book § 3082; see *State* v. *Jones,* 193 Conn. 70, 74, 475 A.2d 1087 (1984); but he failed to do so. On this state of the record, we will not presume that the lower court granted exceptional relief where it is more likely that the court merely followed the routine dictates of the Practice Book and

[7] Motions to dismiss based on the lack of jurisdiction over the person of a defendant must be distinguished from motions attacking the subject matter jurisdiction of the court, which can be raised at any stage of the proceedings, by any party or by the court sua sponte. See Practice Book §§ 810 and 811, footnotes 5 and 6, supra. The court has jurisdiction over a party who appears unless an objection is properly reserved. On the other hand, no party can waive a defect in the court's subject matter jurisdiction. *Reed* v. *Reincke,* 155 Conn. 591, 598–99, 236 A.2d 909 (1967).

held that the defendant had waived his challenge to the court's jurisdiction by failing to file his motion in a timely fashion.[8] Accordingly, we hold that the trial court correctly denied the defendant's motion to dismiss.[9]

## II

In his next claim of error, the defendant asserts that an information is constitutionally infirm when it fails to list the subsections of the statutory offenses charged against the defendant.[10] The information in this case charged that the defendant had committed the crime of "Burglary 3" in violation of General Statutes § 53a-103 in the first count and the crime of "Larceny 3" in violation of General Statutes § 53a-124 in the second count. The defendant claims that the trial court erred in denying his supplemental motion in arrest of judgment because the information charging him did not have the required specificity.[11] It should be noted that

[8] If the trial court had considered the motion on the merits, we might be faced with the question of whether its finding of good cause to suspend the time limit of § 811 was an abuse of discretion. The defendant has never articulated any cause for his failure timely to raise his jurisdictional defenses. Thus the defendant's argument avails nothing, since this court is not required to reverse a ruling of the trial court which reached a correct result, albeit for a wrong reason. See *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978).

[9] The state argues strenuously that the case of *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900 (1965), was wrongly decided and that, regardless of the timeliness of the defendant's motion, the court is not deprived of in personam jurisdiction because of an invalid arrest. Because of our disposition of the defendant's claim, we need not reach this issue. But see *State* v. *Heinz,* 193 Conn. 612, 628–30, 480 A.2d 452 (1984).

[10] Although this question, like the defendant's first claim of error, was capable of determination prior to trial, Practice Book §§ 810 and 811 exempt from the pretrial time restrictions allegations concerning the "failure of the indictment or information to charge an offense." See footnotes 5 and 6, supra.

[11] The defendant's brief does not specify whether the claimed deficiency in the information was the failure to designate which subsection of General Statutes § 53a-124 (larceny in the third degree) was being relied upon or which subsection of General Statutes § 53a-119 (larceny defined) was

the defendant never sought a bill of particulars for the purpose of obtaining additional information regarding the state's allegations.

When the state's pleadings have "informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty." *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979). We have held that "[u]nder our practice, it is sufficient for the state to set out in the information the statutory name of the crime with which the defendant is charged, leaving to the defendant the burden of requesting a bill of particulars more precisely defining the manner in which the defendant committed the offense." *State* v. *Ruiz,* 171 Conn. 264, 270, 368 A.2d 222 (1976); *State* v. *Sumner,* supra, 167; *State* v. *Davis,* 141 Conn. 319, 320–21, 106 A.2d 159 (1954); Practice Book §§ 618, 830–833. While a more detailed information might have been salutary, there was no constitutional infirmity in the state's practice here, nor in the requirement that the defendant request a more particularized allegation if he desires one. *State* v. *Davis,* supra, 321; see also *State* v. *Brown,* 163 Conn. 52, 61, 301 A.2d 547 (1972).[12] The defendant's supplemental motion in arrest of judgment was properly denied.

involved. Presumably he makes no such claim in respect to General Statutes § 53a-103, where the crime of burglary in the third degree is defined in only one subsection.

[12] The defendant's claim of error merely raises the spectre of prejudice, and we have held such a showing legally insufficient upon which to challenge an information. "The defendant can gain nothing from his present claim without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. *State* v. *Rafanello,* 151 Conn. 453, 457, 199 A.2d 13 (1964); *State* v. *Mola,* [128 Conn. 407, 410, 23 A.2d 126 (1941)]; 5 Wharton, Criminal Law and Procedure § 2056." *State* v. *Sumner,* 178 Conn. 163, 168,

### III

Finally, the defendant claims that there was insufficient evidence to support a finding of guilty beyond a reasonable doubt. The circumstantial evidence in this case is largely uncontested, but the parties differ as to the reasonable inferences that can be drawn from it. "This court will construe the evidence in the light most favorable to sustaining the trial court's verdict and will affirm the conclusion of the trier of fact if it is reasonably supported by the evidence and the logical inferences drawn therefrom. *State* v. *Perez,* 182 Conn. 603, 606, 438 A.2d 1149 (1981); see, e.g., *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980); *State* v. *Festo,* 181 Conn. 254, 259, 435 A.2d 38 (1980); *State* v. *Avcollie,* 178 Conn. 450, 466, 423 A.2d 118 (1979). Our review is the same whether the trier of fact is a judge, a panel of judges, or a jury. *State* v. *Perez,* supra; see *State* v. *Holley,* 174 Conn. 22, 26, 381 A.2d 539 (1977)." *State* v. *D'Antuono,* 186 Conn. 414, 421, 441 A.2d 846 (1982). The defendant contends that the evidence presented at trial does not necessarily indicate criminal activity on his part and that the verdict therefore cannot stand. Our inquiry is limited, however, to whether the facts supported reasonable inferences allowing the trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. *State* v. *Haddad,* 189 Conn. 383, 387–90, 456 A.2d 316 (1983).

The defendant's convictions for burglary in the third degree and larceny in the fourth degree require that the factfinder conclude that the defendant intentionally participated in the unlawful entry of the Vorisek home for the purpose of accomplishing a theft of prop-

422 A.2d 299 (1979). Both the clarity of the information and the failure of the defendant to seek a bill of particulars makes the required showing impossible here.

erty therefrom, such as the ring found to be missing. The evidence presented at trial construed most favorably toward upholding the verdict allowed the trial judge to find that the defendant committed these crimes.

General Statutes § 53a-8 provides that a person who, with the intent required to commit a crime, does an act for the purposes of assisting another in the commission of the crime is as guilty as the principal actor.[13] *State* v. *McCalpine,* 190 Conn. 822, 833-34, 463 A.2d 545 (1983) *(Shea, J.,* concurring); *State* v. *Harrison,* 178 Conn. 689, 694-95, 425 A.2d 111 (1979). An accessory must have both the intent to help the principal and the intent to commit the crime. "Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and wilfully assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it." *State* v. *Laffin,* 155 Conn. 531, 536, 235 A.2d 650 (1967).

The evidence presented here allowed the trial court to find more than mere "innocent acts" of the defendant aiding a wrongdoer. In addition to dropping his passenger off at the victim's house, the defendant came back after a few minutes to pick him up again. Meanwhile, the passenger had gone around to the back of the house. There a window was later found broken and opened. The defendant and his companion were then seen tracing a circuitous route through the area that led them back toward the victim's house, where they

---

[13] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

disappeared into the woods. Later, property that the victim had seen only days earlier was found missing from the victim's home. Thus, there was sufficient evidence for the trial court to have concluded that the passenger intentionally broke into the victim's house and took the victim's property; see *State* v. *Smith,* 156 Conn. 378, 383–85, 242 A.2d 763 (1968);[14] and that the defendant's actions in retrieving the passenger after dropping him off at the victim's house, in driving around with him before returning to the same area, and in disappearing with him into the woods surrounding the house, raised an inference that the defendant was knowingly and intentionally participating in this criminal behavior. See, e.g., *People* v. *Jones,* 86 Ill. App. 3d 278, 284, 407 N.E.2d 1121 (1980); see also *State* v. *Gaynor,* 182 Conn. 501, 505–506, 438 A.2d 749 (1980); *State* v. *McGinnis,* 158 Conn. 124, 128–31, 256 A.2d 241 (1969). The defendant testified at trial that his purpose for being in the area was completely innocent and that he did not even know his passenger, whom he claimed to have picked up hitchhiking. This testimony was inconsistent with a statement of the defendant to the police at the time of his arrest, denying that he had had a companion. The factfinder was under no obligation to believe the defendant. "It is the trier's function not only to decide credibility but also to determine the facts and from those facts draw logical and reasonable inferences. *State* v. *Wilson,* 178 Conn. 427, 434, 423 A.2d 72 (1979); *State* v. *Ortiz,* 169 Conn. 642, 646, 363 A.2d 1091 (1975)." *State* v. *Haddad,* supra, 390. We cannot say that the inferences leading to the

---

[14] The absence of the principal actor and the stolen goods does not render the evidence presented at trial insufficient. "So far as probative force is concerned, there is no legal distinction between direct and circumstantial evidence. *State* v. *Ruiz,* 171 Conn. 264, 276, 368 A.2d 222 (1976); *State* v. *[McGinnis],* 158 Conn. 124, 129, 256 A.2d 241 (1969). In a case like this one, where one actor remains at large and unidentified . . . direct evidence may be unavailable." *State* v. *Gaynor,* 182 Conn. 501, 506 n.3, 438 A.2d 749 (1980).

defendant's convictions were illogical or unreasonable. See *State* v. *Fraenza,* 37 Conn. Sup. 809, 813, 437 A.2d 550 (1981).

## IV

Commendably, the state has pointed out that at the time the crime was committed, larceny in the fourth degree was a class C misdemeanor punishable by a maximum of three months incarceration.[15] The trial court apparently thought the defendant had been convicted of the crime charged, larceny in the third degree, rather than the lesser included offense, and imposed a six month sentence.[16] The six month sentence exceeds the statutory limit for the crime of which the defendant was convicted and must be corrected.

There is error only in respect to the sentence imposed on the second count for the conviction of larceny in the fourth degree. The case is remanded for resentencing on that count.

In this opinion the other judges concurred.

---

[15] "[General Statutes] Sec. 53a-36. IMPRISONMENT FOR MISDEMEANOR: MAXIMUM AND MINIMUM SENTENCES. A sentence of imprisonment for a misdemeanor shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a class A misdemeanor, a term not to exceed one year except that when a person is found guilty under section 53a-61 (a) (3), the minimum term shall be not less than one year and such sentence shall not be suspended or reduced, or when a person is found guilty under section 53a-61a, the minimum term shall not be less than one year and such sentence shall not be suspended or reduced; (2) for a class B misdemeanor a term not to exceed six months; (3) for a class C misdemeanor a term not to exceed three months; (4) for an unclassified misdemeanor a term in accordance with the sentence specified in the section of the general statutes that defines the crime."

[16] When sentencing, on December 19, 1980, the trial judge stated that the six month sentence was imposed for the conviction of larceny in the third degree. Apparently the judge overlooked the fact that one month earlier, on November 12, 1980, he had found the defendant guilty only of the lesser included offense of larceny in the fourth degree.